EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Oficina de Ética Gubernamental<br><br>Querellante-Recurrida<br><br>v.<br><br>Julio Román González<br><br>Querellado-Peticionario | Certiorari<br><br>2003 TSPR 70<br><br>159 DPR _____ |

Número del Caso: CC-2001-51


Fecha: 1 de mayo de 2003


Tribunal de Circuito de Apelaciones:
                    Circuito Regional I


Juez Ponente:
                    Hon. José M. Aponte Jiménez

Abogado de la Parte Peticionaria:
                    Lcdo. Israel Roldán González


Abogadas de la Parte Recurrida:
                    Lcda. Gretchen Camacho Rossy
                    Lcda. Wanda Torres Velázquez


Materia: Revisión Judicial de Resolución Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de Ética Gubernamental

    Querellante recurrida

       v.                                   CC-2001-51

Julio Román González

    Querellado peticionario

Opinión del Tribunal emitida por la Jueza Asociada señora NAVEIRA DE RODÓN

San Juan, Puerto Rico a 1 de mayo de 2003

El señor Julio Román González, ex Alcalde del Municipio de Aguada (en adelante Municipio), nos solicita que revisemos una Resolución emitida por el Tribunal de Circuito de Apelaciones (en adelante Tribunal de Circuito) mediante la cual confirmó una Resolución de la Oficina de Ética Gubernamental (en adelante O.E.G.) en la que se le impuso una multa de diez mil dólares ($10,000.00) por haber infringido el Art. 3.3(b) de la Ley Ética Gubernamental, 3 L.P.R.A. § 1823, más mil dólares ($1,000.00) por concepto de honorarios de                                              abogado.

Examinemos los hechos que dieron lugar a la presente controversia.

I

El peticionario fue Alcalde del Municipio desde enero de 1976 hasta enero de 2001 y al mismo tiempo presidió el Comité Local del Partido Nuevo Progresista en Aguada (en adelante Comité). Sus funciones como Alcalde comprendían la dirección, administración, fiscalización y participación en las decisiones del Municipio. Entre marzo de 1990 y octubre de 1994, el Municipio contrató al señor Orlando Vega Ramos, haciendo negocios como Taller Vega y como Electric & Refrigeration Services, para que prestara servicios de construcción, electricidad y refrigeración.[1] El peticionario tenía la facultad de autorizar los contratos y los pagos por los servicios prestados por el señor Vega Ramos.

A finales de 1991, el peticionario, señor Román González, en su carácter de Presidente del Comité, solicitó al señor Vega Ramos una cotización para la instalación de un acondicionador de aire en la oficina del Comité. El entonces Alcalde, señor Román González, autorizó y ordenó la compra de un acondicionador de aire de cien (100) toneladas y dos (2) consolas, una de tres (3) toneladas y la otra de

---

[1] Así surge de la prueba estipulada consistente de quince (15) cheques emitidos por el Municipio a favor del señor Vega Ramos, Taller Vega o Electric & Refrigeration Services, facturas, solicitudes de compra, órdenes y comprobantes de desembolsos.

dos (2) toneladas, que fueron instaladas en el Comité. El precio del equipo era aproximadamente tres mil dólares ($3,000.00). Dos (2) años más tarde, el 18 de noviembre de 1993, el señor Vega Ramos compró al Comité, por dos mil quinientos dólares ($2,500.00), las mismas unidades de acondicionadores de aire que le había vendido en 1991. El peticionario intervino en estas negociaciones autorizando la transacción en su carácter de Presidente del Comité a través de una carta fechada 18 de noviembre de 1993.

El 6 de marzo de 1998 la O.E.G. presentó una querella contra el entonces Alcalde, señor Román González, imputándole haber actuado en contravención al Art. 3.3(b) de la Ley de Ética Gubernamental, *supra*, y al Art. 12(c) del Reglamento de Ética Gubernamental, Reglamento Núm. 4327 de 20 de noviembre de 1992 (en adelante Reglamento de Ética). En síntesis, se imputó al señor Román González haber contratado en su carácter privado, fungiendo como Presidente del Comité, con el señor Vega Ramos durante el período en el cual este último mantuvo relaciones de negocios con el Municipio y el peticionario, en sus funciones como Alcalde, tenía la facultad de decidir e influir en las decisiones del Municipio respecto al otorgamiento de contratos.

Luego de haberse celebrado la vista evidenciaria adjudicativa, la Oficial Examinadora rindió un Informe en el cual determinó que el peticionario había incurrido en dos (2) violaciones al Art. 3.3(b) de la Ley de Ética Gubernamental, *supra*. Recomendó la imposición de una multa

de cinco mil dólares ($5,000.00) por cada infracción para un total de diez mil dólares ($10,000.00). El Director Ejecutivo de la O.E.G., Lcdo. Hiram R. Morales Lugo, acogió en su totalidad el referido Informe e impuso al peticionario, señor Román González, una multa de diez mil dólares ($10,000.00) más mil dólares ($1,000.00) por concepto de honorarios de abogado.

El señor Román González solicitó reconsideración ante la O.E.G., pero ésta fue denegada. Inconforme con dicha determinación, solicitó su revisión ante el Tribunal de Circuito. Adujo que los hechos no configuraron una violación a la Ley de Ética Gubernamental; que la multa impuesta era excesiva; que no actuó con temeridad; y que la agencia había notificado su resolución fuera de término, por lo cual ésta carecía de validez. Luego de varios incidentes procesales, el foro apelativo denegó el recurso de revisión.

Así las cosas, el señor Román González acudió ante nos mediante un recurso de *certiorari*. Alegó que erró el Tribunal de Circuito:

> [A]l resolver que la O.E.G. no erró al concluir que los hechos probados configuran y sostienen una violación al Artículo 3.3(b) de la Ley de Ética Gubernamental y determinar que no es una defensa disponible al [peticionario] el haber realizado las contrataciones en cuestión en representación de una persona jurídica.
>
> [A]l determinar la inexistencia de elementos que indiquen que las multas administrativas impuestas al Sr. Román González son arbitrarias, injustificadas, excesivas y en proporción injusta con los hechos del presente caso.

[A]l determinar que no incidió la Oficina de Ética Gubernamental al imponerle honorarios por temeridad al [peticionario].

[A]l determinar que la Oficina de Ética Gubernamental notificó dentro del término.

II

Por estar íntimamente relacionados, analizaremos conjuntamente los dos (2) primeros señalamientos de error que versan sobre la infracción al Art. 3.3(b) de la Ley de Etica Gubernamental, *supra*, y la razonabilidad de las multas impuestas.

A.   Infracción al Art. 3.3(b) de la Ley de Ética Gubernamental

En primer lugar, debemos resolver si el peticionario infringió el Art. 3.3(b) de la Ley de Ética Gubernamental, *supra*.   De entrada debemos reiterar que aunque los tribunales deben concederle gran deferencia a las decisiones administrativas, las conclusiones de derecho de las agencias son revisables en todos sus aspectos.   Éstas serán sostenidas por el foro judicial siempre que sean razonables y cónsonas con el propósito del legislador.   Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, según enmendada, 3 L.P.R.A. § 2175; *Rivera Concepción v. A.R.P.E.*, res. el 29 de septiembre de 2000, 152 D.P.R. _____ (2000), 2000 T.S.P.R. 143, 2000 J.T.S. 155; *T-JAC v. Caguas Centrum Limited,* 148 D.P.R. 70 (1999); *Reyes*

*Salcedo v. Policía de P.R.*, 143 D.P.R. 85, 94 (1997);

*Fuertes v. A.R.P.E.*, 134 D.P.R. 947, 953 (1993); *Murphy*

*Bernabe v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975).

Examinemos la interpretación que hizo la O.E.G. del

Art. 3.3(b) para determinar si debe ser sostenida a la luz

de la norma antes expuesta.  El Art. 3.3(b) establece:

> Ningún funcionario o empleado público aceptará un
> empleo o relaciones contractuales de negocio, con
> una persona, negocio o entidad que esté
> reglamentada por o que haga negocios con la
> agencia gubernamental para la cual él trabaja
> cuando el funcionario o empleado público
> participe en las decisiones institucionales de la
> agencia o tenga facultad para decidir o
> influenciar las actuaciones oficiales de la
> agencia que tengan relación con dicha persona,
> negocio o entidad.[2]

En *Oficina de Ética Gubernamental v. Cordero Santiago*,

res. el 22 de agosto de 2001, 154 D.P.R. _____ (2001), 2001

T.S.P.R. 118, 2001 J.T.S. 119, señalamos que "el propósito

principal de la Ley de Ética Gubernamental es combatir y

ciertamente, prevenir la corrupción en el gobierno, la

---

[2]    Es menester señalar que el Art. 3.3(b) fue enmendado
mediante la Ley Núm. 150 de 22 de diciembre de 1994 y
actualmente dispone:

> Ningún funcionario o empleado público aceptará un
> empleo o <u>mantendrá</u> relaciones contractuales de
> negocio con una persona, negocio o entidad que
> esté reglamentada por o que haga negocios con la
> agencia gubernamental para la cual él trabaja
> cuando el funcionario o empleado público
> participe en las decisiones institucionales de la
> agencia o tenga facultad para decidir o
> influenciar las actuaciones oficiales de la
> agencia que tengan relación con dicha persona,
> negocio o entidad. (Énfasis suplido.)

Sin embargo, para la adjudicación de la presente
controversia es necesario referirnos a la versión anterior
de la Ley por ser la vigente al momento de los hechos.

conducta ilegal de los empleados públicos, el abuso de poder y el ejercicio de influencias indebidas por parte de los funcionarios de gobierno". Para cumplir cabalmente con este propósito, la O.E.G. aprobó el Reglamento de Ética que especifica con mayor detalle el alcance de las disposiciones de la Ley. *Oficina de Ética Gubernamental v. Cordero Santiago*, *supra*. De acuerdo con el Art. 2 del Reglamento de Ética, "[e]s esencial que los funcionarios y empleados del servicio público mantengan principios del más alto grado de honestidad, integridad, imparcialidad y conducta para garantizar el debido funcionamiento de las instituciones gubernamentales y conservar la confianza de los ciudadanos en su gobierno".

Para cumplir el propósito de la Ley de Ética Gubernamental, el Art. 3.3(b) prohíbe la contratación entre un funcionario público y una persona o entidad privada que a su vez mantenga relaciones contractuales con la agencia donde trabaja dicho funcionario. Por su parte, el Art. 12(c) del Reglamento de Ética dispone:

> Ningún funcionario o empleado público, en su carácter privado, ya sea personalmente o a través de una sociedad, asociación, comité, agrupación o persona jurídica, podrá celebrar un contrato con una persona natural o jurídica con la cual la agencia gubernamental para la cual trabaja mantiene relaciones contractuales de negocio, si dicho funcionario o empleado público, como parte de sus funciones oficiales, participó sustancialmente en la otorgación de las mismas.

De esta forma, el recién citado Art. 12(c) del Reglamento de Ética provee una guía sobre el alcance del Art. 3.3(b) de la

Ley. Del texto de dichas normas se colige que está prohibida la contratación entre el funcionario, por sí o a través de una corporación o entidad privada,[3] y una entidad que a su vez mantenga relaciones contractuales con la agencia donde trabaja el funcionario.

Además, abonando a la interpretación de las disposiciones de la Ley, el Art. 6 del Reglamento de Ética establece que los servidores públicos evitarán "tomar cualquier acción, esté o no específicamente prohibida por el Reglamento, que pueda resultar en o crear la apariencia de: (1) usar las facultades de su cargo, propiedad o fondos públicos para un fin privado". Por otro lado, el Art. 8(c) del Reglamento prohíbe que un funcionario público utilice "los deberes y facultades de su cargo [y] la propiedad o fondos públicos para obtener, directa o indirectamente, para él, para algún miembro de su unidad familiar, [y] **para cualquier otra persona, negocio o entidad, ventajas, beneficios, privilegios**, salvo que esté autorizado, expresa o implícitamente por ley". (Énfasis suplido.)

---

[3] Del conjunto de las disposiciones de la Ley de Ética Gubernamental, así como de su Reglamento y propósito, surge que las prohibiciones van dirigidas a la contratación entre un funcionario y una entidad privada que sea contratista de la agencia para la cual trabaja el funcionario. Estas prohibiciones no se extienden a la contratación entre una entidad privada y varias agencias gubernamentales. Así, por ejemplo, varios organismos administrativos podrían unirse para realizar contratos con el mismo suplidor privado de manera que obtengan mejores precios para beneficiar al erario público. Las prohibiciones establecidas en la Ley de Ética y su Reglamento tampoco se extienden a la contratación entre entidades gubernamentales.

Es a la luz de las anteriores disposiciones que debemos interpretar el alcance del Art. 3.3(b) de la Ley teniendo como principio rector que tanto la Ley de Ética Gubernamental como su Reglamento cumplen el propósito de prohibir que los funcionarios públicos hagan uso de sus cargos para la obtención de ventajas indebidas, es decir, buscan evitar la corrupción en los distintos niveles del servicio público y en las múltiples manifestaciones en las que ésta puede tener lugar.

Para que la O.E.G. pueda imputar una violación al Art.3.3(b) de la Ley de Ética Gubernamental será necesario que concurran los siguientes elementos: (a) que se trate de un funcionario o empleado público; (b) que esté facultado para influir o decidir en las decisiones de la agencia respecto a una persona, negocio o entidad privada o que participe en tales decisiones; (c) que dicha persona, negocio o entidad esté reglamentada por o haga negocios con la agencia para la cual dicho empleado o funcionario público trabaja; y (d) que el empleado o funcionario público, por sí o a través de una corporación o entidad privada, contrate con la persona, negocio o entidad. La agencia deberá demostrar los recién mencionados elementos para imputar *prima facie* una violación al Art. 3.3(b).

Una vez satisfecho este peso inicial de la prueba, el funcionario debe tener la oportunidad de probar que su conducta no redundó en ventajas indebidas, corrupción, beneficios personales o en beneficios para alguna entidad

privada relacionada con él o en abuso de poder, para que pueda ser eximido de la imposición de sanciones. Esta defensa ayuda a evitar que las imputaciones de violaciones éticas se conviertan en procedimientos que sirvan para solapar discrímenes políticos, que atenten innecesariamente contra la reputación de los funcionarios públicos y que constituyan una persecución desenfocada de los problemas reales de corrupción que afectan al servicio público. También el funcionario debe tener la oportunidad de probar, como defensa, que la transacción alegadamente contraria a la ética gubernamental es una razonable a la luz de la totalidad de las circunstancias. Sin pretender hacer una enumeración exhaustiva, para que prospere esta defensa el funcionario debe aportar evidencia tendente a demostrar que la transacción llevada a cabo con la entidad privada es una usual de acuerdo con el tipo de negocios que realiza dicha entidad y, además, debe ofrecer prueba sobre la razonabilidad de las condiciones de la contratación.

Cuando un empleado viole las disposiciones del Art. 3.3(b) y éste no pueda probar que su conducta no iba dirigida a obtener algún beneficio económico o que la transacción no es razonable, la O.E.G. podrá imponer las sanciones administrativas contempladas en la Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. § 2201.[4]   Por otro lado, cuando se demuestre que el

---

[4]   Las sanciones administrativas consistirán en una multa que no excederá de cinco mil dólares ($5,000.00).  Esta sanción aplicará una vez la agencia demuestre un caso *prima*

funcionario público se benefició económicamente, o que se benefició alguna entidad privada relacionada con él, o que tenía la intención de obtener estos beneficios, aunque sus planes se vieran frustrados, la O.E.G. podrá imponer las sanciones civiles establecidas en la Ley de Ética Gubernamental, 3 L.P.R.A. § 1828(b)(3).[5]

Examinemos los hechos de autos para determinar si la O.E.G. logró establecer una violación *prima facie* al Art. 3.3(b). Para el momento en que ocurrieron los hechos el Sr. Julio Román González era Alcalde del Municipio de Aguada, por lo cual era un funcionario público, según dicho término está definido en el Art. 1.2 de la Ley de Ética Gubernamental, *supra*, 3 L.P.R.A. § 1802.[6] Además, el señor Román González admitió en su contestación a la querella[7] que dentro de sus funciones como Alcalde tenía la facultad de

_____

*facie* de violación al Art. 3.3(b) y donde haya ausencia de prueba de que el funcionario no se benefició económicamente con la contratación.

[5]  El funcionario público deberá pagar al Estado una suma equivalente al triple del beneficio económico obtenido o previsto. Además, de encontrarse culpable al funcionario por infringir el Art. 3.3(b), se le podrán imponer sanciones penales. En estos casos tiene que mediar algún beneficio económico y, además, demostrar que ha infringido intencionalmente la Ley de Ética Gubernamental. La penalidad establecida es un año de reclusión o multa de dos mil dólares ($2,000.00) o ambas penas a discreción del tribunal. 3 L.P.R.A. § 1828(a)(1).

[6]  La citada disposición define funcionario público como "aquellas personas que ocupan cargos o empleos en el Gobierno del Estado Libre Asociado de Puerto Rico que están investid[a]s de parte de la soberanía del Estado, por lo que intervienen en la formulación e implantación de la política pública".

[7]  Fechada 12 de marzo de 1998.

influir en las decisiones institucionales del Municipio ya que supervisaba, administraba y autorizaba todos los desembolsos de los fondos municipales. Además, el señor Vega Ramos, proveedor de los acondicionadores de aire para el Comité, también mantenía relaciones contractuales con el Municipio.

Por otro lado, el señor Román González, fungiendo como Presidente del Comité, una entidad privada, llevó a cabo dos (2) contratos con el señor Vega Ramos: uno para la adquisición de unos acondicionadores de aire para el Comité por el precio de tres mil dólares ($3,000.00); y otro, efectuado dos (2) años después, mediante el cual el señor Vega Ramos readquirió el mencionado equipo por el precio de dos mil quinientos dólares ($2,500.00). Como podrá observarse, la O.E.G. logró establecer los elementos para imputar una violación *prima facie* al Art. 3.3(b).

El peticionario aduce que su conducta no está proscrita por la referida disposición ya que llevó a cabo los contratos en su carácter de Presidente del Comité, una entidad privada. No le asiste la razón. Como previamente reseñamos, el propósito de la Ley de Ética Gubernamental es prevenir la corrupción en el gobierno, la conducta ilegal, el ejercicio de influencias indebidas y el abuso de poder por parte de los funcionarios públicos. *Oficina de Ética Gubernamental v. Cordero Santiago*, *supra*. A tales fines se prohíbe la contratación entre los funcionarios y las

entidades privadas que mantienen relaciones contractuales con la agencia donde laboran.

La referida prohibición se extiende no solamente a las contrataciones en el carácter personal de los funcionarios, sino a aquellas que éste hace a través de entidades privadas, tales como una asociación, corporación, junta, comité o comisión. Entendemos que no puede ser otra la interpretación que debemos hacer del Art. 3.3(b) a la luz de la Ley, su propósito y el Reglamento de Ética.[8] Una interpretación menos restrictiva atentaría contra el propósito de la legislación y la tornaría inefectiva, ya que cualquier funcionario podría utilizar como subterfugio una transacción a través de una entidad privada, fuere ésta una corporación, sociedad, junta, comité o comisión, para ejercer una influencia indebida en la contratación y obtener algún beneficio económico por vías inapropiadas.

Ahora bien, el señor Román González actuó en contravención al Art. 3.3(b) de la Ley de Ética Gubernamental al contratar en dos (2) ocasiones con el señor Vega Ramos mientras este último mantenía contratos con el Municipio del cual el señor Román González era Alcalde.

El peticionario aduce como defensa que no se benefició económicamente de las transacciones y que la O.E.G. no

---

[8]     Tener que descorrer el velo corporativo para poder imputar una violación ética a un funcionario público trastocaría irremediablemente el andamiaje que pretende evitar y penalizar la corrupción en el país. Debe recordarse que en muchos casos los actos contrarios a la ética en el servicio público ocurren a través de los

controvirtió esta alegación. Los hechos ante nuestra consideración, según la prueba que obra en el expediente, son que el precio del equipo era de tres mil dólares ($3,000.00) y esa fue la cantidad que el Comité pagó en el primer contrato autorizado por el peticionario. Dos (2) años más tarde el señor Vega Ramos readquirió el mismo equipo por el precio de dos mil quinientos dólares ($2,500.00), es decir, con una diferencia de quinientos dólares ($500.00) del precio original.

Ante estos hechos, le correspondía al ex Alcalde, señor Román González, como parte de su defensa, probar que la adquisición e instalación de un acondicionador de aire de cien (100) toneladas y dos (2) consolas, una de tres (3) toneladas y otra de dos (2), por la cantidad de tres mil dólares ($3,000.00), era una transacción de negocios razonable, de las que usualmente lleva a cabo el señor Vega Ramos en su negocio Taller Vega o Electric & Refrigeration Services. Para poder prevalecer en su defensa, también tenía que probar que la transacción del señor Vega Ramos de comprar de vuelta el acondicionador de aire que le había vendido al señor Román González era una transacción usual en su negocio y que el precio de dos mil quinientos dólares ($2,500.00) era uno razonable, o sea, que un equipo de la naturaleza del adquirido por el Comité, con dos (2) años de uso, normalmente deprecia sólo quinientos dólares ($500.00).

---

partidos políticos, que tienen personalidad jurídica propia. *P.S.P. v. E.L.A.*, 107 D.P.R. 590, 595 (1978).

En otras palabras, la prueba sobre la razonabilidad de la transacción le correspondía al funcionario, en este caso al ex Alcalde, señor Román González. Si no fue razonable la transacción, entonces tenemos que concluir que el ex Alcalde, fungiendo como Presidente del Comité, utilizó su posición e influencia para obtener beneficios de un contratista que hacía negocios con el Municipio, para la entidad privada que presidía, el Comité. Un funcionario público puede levantar como defensa ante una imputación de violación ética el no haberse beneficiado, directa o indirectamente, de la transacción, pero para prevalecer tiene que presentar prueba de este hecho.

Aunque el peticionario alegó que no se benefició económicamente con la transacción, no presentó prueba para sostener su defensa. Cabe señalar, además, que del expediente tampoco surge la razonabilidad de las transacciones entre el Comité y el señor Vega Ramos.[9] A la luz del análisis anterior, resolvemos que el peticionario incurrió en dos (2) violaciones al Art. 3.3(b) de la Ley de Ética Gubernamental, *supra*, por ende, debemos determinar si las multas impuestas fueron irrazonables.

B. Razonabilidad de las multas

---

[9]     Es menester recordar que la Ley de Ética Gubernamental no sólo proscribe el beneficio económico que el funcionario derive para sí, sino el que obtenga directa o indirectamente para un miembro de su familia o para una entidad o asociación, conforme el Art. 3.2(c) de la Ley de Ética Gubernamental, *supra*, 3 L.P.R.A. § 1822, y el Art. 12(c) del Reglamento de Ética.

Reiteradamente se ha validado la facultad de las agencias para imponer multas o penalidades por la violación a las leyes o a los reglamentos que se les ha delegado implementar. *Pérez v. Cooperativa de Cafeteros de P.R.*, 103 D.P.R. 555 (1975). La Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. § 2201, establece que las agencias podrán imponer multas que no excederán de cinco mil dólares ($5,000.00) por cada violación a las leyes que éstas administran. Además, el Art. 3.8 de la Ley de Ética Gubernamental, *supra*, faculta a la O.E.G. para imponer sanciones de naturaleza civil y penal por violaciones éticas.

Al ejercer su función revisora respecto a las sanciones impuestas por una agencia administrativa, los tribunales han reconocido gran discreción a las agencias en la selección de las medidas impuestas para cumplir con el propósito de la legislación cuya administración e implantación se les ha delegado. Las sanciones impuestas por la agencia serán sostenidas siempre que los organismos actúen dentro del marco de su conocimiento especializado y de la ley. *Comisionado de Seguros de Puerto Rico v. Antilles Ins. Co.*, 145 D.P.R. 226, 234 (1998). En tales casos la revisión judicial no será para determinar si la sanción guarda proporción con la conducta por la cual se impone o si es demasiado fuerte. *Id.* "Esta evaluación corresponde hacerla a la propia agencia, que por su experiencia especializada es

quien está en la mejor posición para conocer los efectos de una violación a los intereses protegidos y cuya agencia, al mismo tiempo asegura cierto grado de uniformidad y coherencia en la imposición de sanciones". *Id*.

Siempre que la sanción administrativa esté basada en evidencia sustancial, no constituya una actuación *ultra vires* y tenga una relación razonable con los actos que se quiere prohibir, los tribunales deben sostenerla. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.*, 144 D.P.R. 425, 439 (1997). Al imponer la sanción al peticionario por haber incurrido en violaciones éticas, nos dejamos guiar por el criterio de la O.E.G. y lo avalamos. Por lo tanto, el segundo error no fue cometido.

III

El peticionario plantea como tercer error que no procedía la imposición de honorarios de abogado porque no actuó temerariamente. La conducta alegadamente temeraria consistió en sus incomparecencias a algunos señalamientos y solicitudes de cambios de fecha de la vista adjudicativa por compromisos previos de la representación legal del peticionario.

La imposición de honorarios de abogado por temeridad tiene el propósito de penalizar "al litigante perdidoso que por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra

parte, innecesariamente a asumir las molestias, gastos, trabajo e inconvenientes de un pleito". *Domínguez Vargas v. Great American Life Assurance Company of Puerto Rico, Inc.*, res. el 12 de julio de 2002, 157 D.P.R. _____ (2002), 2002 T.S.P.R. 104, 2002 J.T.S. 110.

Existirá temeridad cuando: (1) en la contestación a la demanda se niegue responsabilidad, pero ésta se acepte posteriormente; (2) la parte demandada se defienda injustificadamente de la acción; (3) se crea que la cantidad reclamada es exagerada y esa sea la única razón para oponerse a los reclamos del demandante y no admitir responsabilidad, pudiendo limitar la controversia a la fijación de la cantidad reclamada; (4) el demandado se arriesgue a litigar un caso del que se surja a todas luces su responsabilidad; y (5) cuando se niegue un hecho cuya certeza le consta a quien hace la alegación. *Blas Toledo v. Hospital Guadalupe*, 146 D.P.R. 267, 336 (1998); *Fernández v. San Juan Cement Co.*, Inc. 118 D.P.R. 713, 718-719 (1987). El grado o intensidad de la conducta temeraria o frívola es el factor determinante para fijar la cuantía de los honorarios de abogado.

La conducta del señor Román González no tuvo el objetivo de defenderse obstinadamente, y sin fundamentos, de la acción administrativa, sino que consistió en solicitudes de cambios a los señalamientos de la conferencia con antelación a la vista adjudicativa. En total hubo cinco (5) solicitudes de cambios, tres (3) de las cuales fueron

presentadas por la respresentación legal del peticionario, Lcdo. Israel Roldán González, debido a compromisos profesionales previos; y dos (2) solicitadas por la O.E.G.[10] No debemos penalizar al peticionario por una conducta que no se llevó a cabo con la intención de levantar defensas injustificadas o de entorpecer las funciones adjudicativas de la O.E.G., particularmente cuando la propia agencia también solicitó cambios en los señalamientos. En el presente caso a lo sumo debemos instar a la representación legal del peticionario a ser más cuidadoso en lo sucesivo de aceptar gestiones profesionales que congestionarán su calendario e impedirán la prestación de una representación adecuada.[11] Resolvemos que no procede la imposición de honorarios de abogado al peticionario, por ende, el tercer error fue cometido.

IV

Finalmente, el peticionario aduce que la O.E.G. emitió y notificó su Resolución pasado el término dispuesto en ley, por lo cual ésta carece de validez.

---

[10] Así consta en la notificación de la Oficial Examinadora de 23 de febrero de 1999.

[11] Canon 18 de Ética Profesional, 4 L.P.R.A. Ap. IX. Aunque al representante legal del peticionario se le impuso una sanción económica por no someter a tiempo el informe de la conferencia con antelación a la vista adjudicativa, tal conducta no es atribuible al peticionario, sino a la irresponsabilidad y falta de competencia del licenciado Roldán González.

La Sec. 3.14 de la Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. § 2164, establece que las agencias deben emitir sus órdenes o resoluciones finales por escrito:

> [D]entro de noventa (90) días de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho....
>
> . . . .
>
> **La agencia deberá notificar a las partes la orden o resolución <u>a la brevedad posible</u>**, por correo y deberá archivar en autos copia de la orden o resolución final y de la constancia de la notificación.  Una parte no podrá ser requerida a cumplir con una orden final a menos que dicha parte haya sido notificada de la misma. (Énfasis suplido.)

Por otro lado, el Art. 30 de las Reglas de Procedimientos para Vistas Adjudicativas de la O.E.G., Reglamento Núm. 4749 de 4 de septiembre de 1992, establece que "dentro de los noventa (90) días después de concluida la vista, la orden o resolución deberá ser emitida por escrito...."

En *Junta Examinadora de Tecnólogos Médicos v. Elías*, 144 D.P.R. 483, 494-495 (1997), resolvimos que los términos establecidos en la Sec. 3.14 de la Ley de Procedimiento Administrativo Uniforme, *supra*, son directivos y no jurisdiccionales.  Dicho de otra forma, tales términos son de cumplimiento estricto. *Lab. Inst. Med. Ava. v. Lab. C. Borinquen*, res. el 9 de septiembre de 1999, 149 D.P.R. _____ (1999), 99 T.S.P.R. 136, 99 J.T.S. 141.  No obstante, la ampliación de dichos términos sólo ocurrirá en circunstancias excepcionales o por renuncia de las partes.

El término directivo de noventa (90) días es aplicable a la emisión de la resolución por parte de la agencia.  Ni la Ley de Procedimiento Administrativo Uniforme ni las Reglas de Procedimiento para Vistas Adjudicativas de la O.E.G. establecen un término para la notificación de la Resolución.   La Sec. 3.14 de la Ley de Procedimiento Administrativo Uniforme, *supra*, se limita a indicar que **la notificación de la resolución debe llevarse a cabo a la brevedad posible**.   La Ley permite que las agencias notifiquen sus determinaciones dentro de un término razonable, que puede ser dentro de los noventa (90) días con los que cuenta para emitir su resolución o después de transcurrido el referido término.  Exigirles a las agencias que notifiquen sus resoluciones dentro de rígidos límites de tiempo sería prácticamente imposible debido a la congestión de trabajo que éstas tienen.[12]  Por otro lado, debe tomarse en consideración que en ocasiones los organismos administrativos enfrentan escasez de recursos humanos y económicos.

En virtud de lo anterior, resolvemos que la Ley de Procedimiento Administrativo Uniforme, *supra*, faculta a las agencias para notificar sus decisiones dentro de un término razonable, aunque hayan transcurrido los noventa (90) días de carácter directivo con los que cuentan para tomar su decisión.   Ahora bien, para determinar si la agencia

---

[12]   Igual ocurre en los tribunales donde el volumen de casos ha acarreado un retraso en la mayoría de las salas del país.

notificó su determinación dentro de un término razonable, será necesario atender a las circunstancias particulares de cada caso, tomando en consideración el tiempo transcurrido desde que se emitió la decisión hasta que ésta fue notificada y el daño que haya ocasionado la tardanza a la parte adversamente afectada por la decisión administrativa. Mediante el análisis de la totalidad de las circunstancias de cada caso protegemos a las partes de actuaciones administrativas arbitrarias.

¿Notificó la O.E.G. su resolución al señor Román González dentro de un término razonable? Nuestra respuesta es en la afirmativa. En el presente caso, la vista adjudicativa se llevó a cabo el 2 de febrero de 2000 y la Resolución fue emitida el 2 de mayo del mismo año, es decir, el día número ochenta y nueve (89) desde la celebración de la vista. La O.E.G. emitió su resolución oportunamente, pero la notificó al peticionario el 8 de mayo de 2000, a los seis (6) días de haberla emitido.

Entendemos que seis (6) días es un término razonable para la notificación, en particular si atendemos al propósito de ésta que es poder requerirle a la parte afectada que cumpla con la determinación de la agencia. *Véanse* Ley de Procedimiento Administrativo Uniforme, *supra*, 3 L.P.R.A. § 2164; *Colón Torres v. Autoridad de Acueductos y Alcantarillados*, 143 D.P.R. 119 (1997). Además, mediante la notificación de la resolución administrativa la parte

adversamente afectada adviene en conocimiento de su derecho a solicitar reconsideración o revisión, según sea el caso.

La notificación llevada a cabo el 8 de mayo de 2000, seis (6) días después de haberse emitido la Resolución de la O.E.G., no afectó al peticionario en el ejercicio de sus derechos para solicitar reconsideración y revisión judicial. De hecho, éste solicitó reconsideración ante la O.E.G. y posteriormente acudió al Tribunal de Circuito mediante recurso de revisión. A la luz de lo anterior, resolvemos que la Resolución de la agencia fue emitida y notificada dentro del término establecido en la Ley de Procedimiento Administrativo Uniforme y las Reglas de Procedimientos para Vistas Adjudicativas de la O.E.G.

Por los fundamentos antes expuestos, confirmamos el dictamen del Tribunal de Circuito y la Resolución de la Oficina de Ética Gubernamental que encontró incurso al señor Julio Román González en violaciones al Art. 3.3(b) de la Ley de Ética Gubernamental, no obstante, revocamos la imposición de honorarios de abogado.


MIRIAM NAVEIRA DE RODÓN
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Oficina de Ética Gubernamental

    Querellante recurrida

      v.

                                  CC-2001-51

Julio Román González

    Querellado peticionario

SENTENCIA

San Juan, Puerto Rico a 1 de mayo de 2003

Por los fundamentos expuestos en la Opinión que antecede, se dicta sentencia y se confirma el dictamen del Tribunal de Circuito y la Resolución de la Oficina de Ética Gubernamental que encontró incurso al señor Julio Román González en violaciones al Art. 3.3(b) de la Ley de Ética Gubernamental, no obstante, se revoca la imposición de honorarios de abogado.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez disiente sin Opinión escrita. El Juez Asociado señor Corrada del Río no intervino.

Patricia Otón Olivieri
Secretaria del Tribunal Supremo