*804 TEXTO COMPLETO DE LA SENTENCIA
Comparece ante nos, Domingo Serra Romero, en adelante, el recurrente, solicitando la revocación de una Resolución emitida por el Departamento de Recursos Naturales y Ambientales, en adelante, el D.R.N.A. Mediante dicho dictamen, el D.R.N.A. declaró Con Lugar la causa de acción presentada contra el recurrente.
Por los fundamentos que expondremos a continuación, se confirma la Resolución recurrida.
I
Conforme surge del recurso ante nuestra consideración, el 26 de febrero de 2004, se presentó contra el recurrente una Querella. En la misma se alegó que el recurrente, por sí o a través de sus agentes, había realizado los días 17 y 21 de enero de 2004 y 18 de febrero de 2004 en el Barrio Zarzal del Municipio de Río Grande, movimientos de corteza terrestre, depósito de relleno, destrucción de manglar y afectación de los manglares aledaños. Se planteó que las actividades mencionadas se habían realizado sin contar con los permisos estatales y federales necesarios.
Se alegó que los actos descritos infringían la Ley Núm. 133 de 1 de julio de 1975, según enmendada, conocida como “Ley de Bosques de Puerto Rico”, la Sec. 3.01 del Reglamento de Planificación Núm. 25, Reglamento de Siembra, Corte y Forestación de Puerto Rico, la Ley Núm. 241 de 15 de agosto de 1999, según enmendada, conocida como “Nueva Ley de Vida Silvestre de Puerto Rico” y la Ley Núm. 132 de 25 de junio de 1968, según enmendada (Arena, grava y piedra). Se solicitó la restauración del área, así como la imposición de multas, a saber, $50,000 por la infracción a la Ley Núm. 132, supra, $10,000 por la violación a la Ley Núm. 133, supra, $5,000 por la infracción a la Ley Núm. 242, supra, y $50,000 por la violación a la Ley Núm. 136, supra.
A la luz de lo anterior, se emitió una Orden de Cese y Desistimiento tanto por parte del Gobierno Federal como Estatal. Se desprende de la contestación a la misma, que el recurrente había sido previamente imputado por violaciones similares. En dicha ocasión, el recurrente no era el dueño de la finca, sino meramente era un comunero con 0.19% de participación. Posteriormente, advino a ser dueño de la finca.
*805 Completados los trámites de rigor, se celebró la vista del caso ante la Oficial Examinadora. Se colige del expediente que dicha vista fue celebrada el 21 de octubre de 2004.
El 22 de mayo de 2008, el recurrente presentó una “Moción Urgente”. Mediante la misma, requirió al D.R.N. A. emitiera un dictamen. Señaló que habían transcurrido 3 años desde la vista y que, a pesar de ello, no se había emitido el Informe.
El Informe fue dictado el 25 de enero de 2008 y acogido por el D.R.N.A. el 4 de agosto de 2008, fecha en que fue emitida la Resolución recurrida. Evaluada la prueba, se emitieron las siguientes determinaciones de hechos las cuales transcribimos in extenso:

“1. El querellado Domingo Serra (recurrente) se dedica al desarrollo y venta de terrenos de su propiedad ubicados en Playa Picúas, Barrio Zarzal del Municipio de Río Grande. Exhibit III de la Querellada (recurrente), pág. 2 Determinación de Hechos 1.

2. Afines de enero y principios de febrero de 2004, la parte querellada (recurrente) realizó remoción de terrenos en una finca ubicada en la Playa Picúas. De igual forma depositó material de relleno en un área de treinta pies por treinta pies (30'x 30'). El material se dispersó y aplanó con equipo pesado. El material depositado tiene una altura de dos pies (2') sobre la corteza terrestre. En el terreno se hicieron marcos de madera y “rotos” con el propósito de erigir una estructura de hormigón. Exhibit III de la Querellada (recurrente) y Acta de Inspección Ocular de 25 de junio de 2004.

3. Al remover y depositar relleno, la parte querellada (recurrente) arrancó, cortó y afectó los árboles del lugar.

4. El lugar en que la parte querellada (recurrente) realizó la remoción y depósito de relleno es un humedal. La parte querellada (recurrente) carecía de permiso para realizar el movimiento de terreno.

5. El depósito de material de relleno afectó el flujo de las aguas en el lugar. Este cambio hidrológico afectó el crecimiento del manglar. ” (Enfasis en el original.)
Véase, pág. 11 del Apéndice.
En su consecuencia, se declaró Con Lugar la acción de autos en cuanto a las infracciones a las Leyes Núms. 132 y 133, supra, imponiéndosele al recurrente una multa de $30,000 y $10,000, respectivamente.
Insatisfecho, el recurrente interpuso escrito intitulado “Moción de Reconsideración”. En el mismo, adujo que la vista del caso había sido celebrada el 26 de agosto de 2004 y que no había sido hasta el 25 de enero de 2008 que el Oficial Examinador sometió el Informe y que 159 días después se emitió la Resolución recurrida. Argüyó que el Reglamento disponía que la Resolución final debía ser emitida dentro de los 90 días después de concluida la vista, a menos que el término hubiera sido renunciado o ampliado con el consentimiento escrito de las partes, ausente en el caso de autos.
El 3 de septiembre de 2008, se denegó el petitorio del recurrente.
Inconforme con la determinación del D.R.N.A., el recurrente comparece ante este Tribunal. Contando con la comparecencia de la Procuradora General Interina, en representación del D.R.N.A., procedemos a resolver.
II
En su escrito, el recurrente alega que incidió el D.R.N.A., al violar el debido proceso de ley cuando después de haber sido sometido el caso para su Resolución final, tardó 1,371 días, equivalente a 3 años y nueve meses *806 para emitir el dictamen en violación del ordenamiento jurídico, ello en claro ejercicio de exceso de jurisdicción dejando sin efecto las disposiciones de ley y reglamento e incurriendo en incuria y habiendo perdido jurisdicción en el caso.
A su vez, apunta que medió abuso de discreción por parte de la agencia al imponerle unas multas excesivamente altas e incoherentes cuando las alegadas violaciones imputadas eran solamente sobre una porción de terreno de 30'x 30'; y al no cumplir con su obligación de evaluar y resolver el conflicto de prueba ante sí, al no considerar la totalidad de la prueba sometida en el caso emitiendo la Resolución recurrida sin realizarse una evaluación justa de la prueba.
III
El Reglamento Núm. 6442 intitulado “Reglamento de Procedimientos Administrativos del Departamento de Recursos Naturales y Ambientales de Puerto Rico” establece en su Art. 27 que: “[t]odo caso sometido a un procedimiento adjudicativo ante esta Agencia deberá ser resuelto dentro de un término de seis (6) meses desde su radicación, salvo circunstancias excepcionales.” Por su parte, el Art. 33 de dicho cuerpo reglamentario dispone que:

“(1) El oficial examinador que presida la Vista Adjudicativa preparará un informe para la consideración de la Agencia, o emitirá la decisión por escrito si le ha sido delegada la autoridad para ello. El informe del oficial examinador será sometido al Jefe de la Agencia dentrq de los treinta (30) días siguientes a la fecha en que quedó sometido el caso, salvo que ocurran circunstancias extraordinarias que ameriten un término mayor y el oficial examinador lo comunique al Jefe de la Agencia.

(2) Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) dias (sic) después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. ”

Por su parte, la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como “Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico ”, 3 L.P.R.A. see. 2101 et seq., fue promulgada con el fin de brindar a la ciudadanía servicios públicos de eficiencia y de alta calidad, con esmero y prontitud, al amparo de las garantías básicas del debido proceso de ley. Véase, Exposición de Motivos de la Ley Núm. 170, supra, 1988 Leyes de Puerto Rico 825; Magriz v. Empresas Nativas, 143 D.P.R. 63, 69 (1997).
La Sec. 3.13 de la Ley Núm. 170, supra, dispone, en lo pertinente:

“(g) Todo caso sometido a un procedimiento adjudicativo ante una agencia deberá ser resuelto dentro de un término de seis (6) meses, desde su radicación, salvo en circunstancias excepcionales. ”

3 L.P.R.A. see. 2163.
Más adelante, la Sec. 3.14 del estatuto establece, en lo que aquí nos concierne:

“Una orden o resolución final deberá ser emitida por escrito dentro de noventa (90) días después de concluida la vista o después de la radicación de las propuestas determinaciones de hechos y conclusiones de derecho, a menos que este término sea renunciado o ampliado con el consentimiento escrito de todas las partes o por causa justificada. ”

3 L.P.R.A. see. 2164.
*807 Los plazos arriba indicados para que la agencia resuelva un caso ante su consideración no son de carácter jurisdiccional, ya que los términos de esa naturaleza no son prorrogables. Cuando los términos pueden ser prorrogados, tienen que ser considerados como directivos. La obligación de las agencias de cumplir con dichos términos es de cumplimiento estricto. De ahí que los mismos pueden ser extendidos con el consentimiento de las partes o por causa justificada. O.E.G. v. Román, 159 D.P.R. 401 (2003); Lab. Inst. Med. Ava. v. Lab. C. Borinquen, 149 D.P.R. 121 (1999); J. Exam. Tec. Med. v. Elias et al., 144 D.P.R. 483 (1997).
No debemos perder de perspectiva que con estos términos, el Legislador quiso imponer a las agencias la obligación de resolver todo caso sometido al procedimiento adjudicativo dentro de un término de seis (6) meses, para evitar la dilación excesiva en la adjudicación de casos. J. Exam. Tec. Med. v. Elias et al., supra. De esa manera, se promueve que los procesos administrativos se lleven a cabo de manera rápida y eficiente. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra.
Cuando una agencia no resuelve un caso dentro del término establecido por la Ley Núm. 170, supra, la parte afectada por la tardanza puede presentar un mandamus ante este Foro Aelativo. Esto es sin menoscabo de que transcurrido dicho término, la parte puede solicitarle al foro administrativo que desestime el caso bajo el fundamento de que no existía consentimiento previo ni causa justificada para que la agencia se excediera de dicho término. Id.; Exam. Tec. Med. v. Elias et al, supra.
IV
En el caso de autos, el recurrente nos plantea, en su primer error, que las circunstancias mencionadas en el ordenamiento jurídico para extender el término establecido que tenía el D.R.N.A. para emitir su Resolución, a saber, circunstancias extraordinarias o renuncia de las parte, no se dieron en el caso de autos. Es su contención que el incumplimiento de la agencia convierte su acción en una arbitraria e irrazonable. Entiende que tanto el Oficial Examinador como el Secretario del D.R.N.A. incurrieron en incuria. [1]
Conforme reseñado, los términos citados por el recurrente no son jurisdiccionales. O.E.G. v. Román supra; Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra; J. Exam. Tec. Med. v. Elias et al., supra. Le correspondía, pues, al recurrente reclamar a la agencia que cumpliera con esos términos y solicitara la desestimación del caso bajo el fundamento de que no existía consentimiento previo ni causa justificada para que la agencia se excediera de dicho término. Exam. Tec. Med. v. Elias et al., supra. También podía acudir a este Foro, mediante la presentación de un recurso de mandamus, para compeler a la agencia a cumplir con los plazos antes citados. Lab. Inst. Med. Ava. v. Lab. C. Borinquen, supra. En otras palabras, el ordenamiento jurídico le provee al recurrente alternativas para que se acelerara la resolución de su caso de así desearlo. Si el recurrente no tomó dichas providencias, no puede alegar ahora que la agencia se tardó en resolver.
En su segundo error, el recurrente apunta que la agencia abusó de su discreción al imponerle multas excesivamente altas cuando las alegadas violaciones imputadas eran solamente sobre una porción de terreno de 30 x 307
La jurisprudencia constante sobre esta materia le ha reconocido amplia discreción a las agencias administrativas para que apliquen las sanciones que la ley anticipe como remedio a los asuntos sometidos a su jurisdicción. Así lo reiteró el Tribunal Supremo en Comisionado de Seguros v. PRIA, res. el 18 de agosto dè 2006, 168 D.P.R. _ (2006), 2006 J.T.S. 142, y apuntó:
“Respecto a la revisión de la facultad administrativa para imponer sanciones, los tribunales también le han reconocido mucha discreción a las agencias en la selección de las medidas que les ayuden a cumplir los objetivos de las leyes cuya administración e implantación se les ha delegado, siempre que actúen dentro del marco de su conocimiento especializado y de la ley. Associated Insurance Agencies, Inc. v. Comisionado de Seguros de Puerto Rico, 144 D.P.R. 425, 438 (1997). En estos casos, la revisión judicial no será para determinar si la sanción *808 impuesta guarda proporción con la conducta por la cual se impone la sanción ni si la sanción es demasiado fuerte. Esta evaluación le corresponde a la propia agencia, que por su experiencia especializada es quien está en mejor posición para conocer los efectos de una violación a los intereses protegidos. De esa forma se asegura también cierto grado de uniformidad y coherencia en la imposición de sanciones. La revisión judicial, por tanto, se limitará a evitar que las agencias actúen en forma ilegal, arbitraria, en exceso de lo permitido por ley o en ausencia de evidencia sustancial que justifique la medida impuesta; en otras palabras, a evitar que éstas actúen movidas por el capricho o en abuso de su discreción. Comisionado de Seguros de Puerto Rico v. Antilles Insurance Company, 145 D.P.R. 226, 234 (1998).”
El D.R.NA. tiene autoridad en ley para imponer multas de hasta $50,000 por violación a la Ley Núm. 132, supra, y de $10,000 en caso de violación a la Ley Núm. 133, supra. En este caso impuso multas de $30,000 y de $10,000, respectivamente. Dichas multas están dentro del parámetro de ley. La agencia “por su experiencia especializada es quien está en mejor posición para conocer los efectos de una violación a los intereses protegidos”. Por otro lado, observamos que surge de la Resolución recurrida que se “solicitó como remedio...la imposición de las siguientes multas: (1) $50,000.00 por la infracción a la Ley 132; (2) $10,000.00 por infracción a la Ley 133”, así como otras sanciones que no fueron impuestas. Así que respecto a la violación a la Ley Núm. 132, supra, no se le impuso la multa más alta. En conclusión, nada nos lleva a concluir que fueron irrazonables las sanciones impuestas, las cuales reiteramos están dentro de los parámetros legales. A su vez, pesa en nuestra determinación lo señalado por el Estado en cuanto a que el sector donde ocurrieron los hechos que dan génesis a la controversia de autos es un área de gran valor ecológico. [2]
Por último, en su tercer error, el recurrente nos señala que incidió el D.R.N.A. “al no cumplir con su obligación de evaluar y resolver el conflicto de prueba ante sí, al no considerar la totalidad de la prueba sometida en el casó”. Sobre el particular, nos apunta que no se evaluó cierto escrito presentado por él ante el Gobierno Federal. Explica que en dicho escrito refutaba los mismos planteamientos de la querella del D.R.N.A., y donde objetó la jurisdicción de la agencia en dichos asuntos, toda vez que los terrenos objeto de la misma, no eran humedales. Adiciona que el hecho de que no testificara no daba margen para que no evaluaran dicha pieza de evidencia. Hemos evaluado el argumento del recurrente y observamos que nos invita a sustituir las determinaciones de hechos de la agencia por las suyas. Declinamos tal invitación.
El Tribunal Supremo ha reiterado que las decisiones de los organismos administrativos merecen la mayor deferencia judicial. Oficina del Comisionado de Seguros de P.R. v. Carpets & Rugs, res. en 22 de mayo de 2008, 174 D.P.R. _ (2008), 2008 J.T.S. 114; Empresas Ferrer, Inc. v. A.R.P.E., res. en 2 de octubre de 2007, 172 D.P.R. _ (2007), 2007 J.T.S. 181. Esta deferencia se debe a que son éstos los que cuentan con el conocimiento experto y con la experiencia especializada de los asuntos que le son encomendados. González, v. Junta de Directores, res. en 27 de noviembre de 2006, 169 D.P.R. _ (2006), 2007 J.T.S. 185; Municipio San Juan v. Plaza Las América, res. en 18 de octubre de 2006, 169 D.P.R. _ (2006), 2006 J.T.S. 164; López v. Administración, res. en 30 de agosto de 2006, 168 D.P.R. _ (2006), 2006 J.T.S. 146; Hernández v. Centro Unido, res. en 10 de agosto de 2006, 168 D.P.R. _ (2006), 2006 J.T.S. 140; Martínez v. Rosado, res. en 14 de septiembre de 2005, 165 D.P.R. _ (2005), 2005 J.T.S. 132.
La revisión judicial debe limitarse a determinar si actuaron arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituya un abuso de discreción. Oficina del Comisionado de Seguros de P.R. v. Carpets & Rugs, supra; Asoc. de Vecinos Tulip v. Junta de Planificación, res. en 22 de mayo de 2006, 171 D.P.R. _ (2006), 2006 J.T.S. 146; López v. Administración, supra; Camacho v. A.A.F.E.T., res. en 22 de mayo de 2006, 168 D.P.R. _ (2006), 2006 J.T.S. 97; Rivera Concepción v. A.R.P.E., 152 D.P.R. 116 (2000).
Por lo general, éstas gozan de gran deferencia y respeto de parte de nuestros tribunales. Empresas Ferrer, Inc. v. A.R.P.E., supra; Mun. de San Juan v. J.P., 169 D.P.R. _ , 2006 J.T.S. 164; Hernández v. Centro Unido, 168 D.P.R. _, 2006 J.T.S. 140. Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado *809 que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. Id.
La intervención judicial en estos casos, de este modo, ha de centrarse en tres aspectos principales: (1) si el remedio concedido fue apropiado, (2) si las determinaciones de hechos están razonablemente sostenidas por la prueba, y (3) si las conclusiones de derecho del organismo administrativo son correctas. See. 4.5 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada, conocida como “Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico”, 3 L.P.R.A. see. 2175; Empresas Ferrer, Inc. v. A.R.P.E., supra; P.R.T.C. v. J. Reg. Tel. de P. R., 151 D.P.R. 269 (2000); Misión Ind. P.R. v. J.P. y A.A.A., 142 D.P.R. 656 (1997).
El criterio rector será la razonabilidad de la agencia recurrida. Así pues, al realizar su función revisora el tribunal está obligado a tomar en cuenta la especialización y experiencia de la agencia sobre las cuestiones que tuviera ante sí. Asoc. de Vecinos Tulip v. Junta de Planificación, supra. Al evaluar los casos, es necesario distinguir entre cuestiones de interpretación estatutaria, en la que los tribunales son especialistas, y cuestiones propias para la discreción o pericia administrativa. Id. Cuando una agencia interpreta un estatuto que viene llamada a poner en vigor de forma tal que produce resultados contrarios al propósito de esa ley, dicha interpretación no prevalece. Id.
La norma reiterada es que los tribunales apelativos no intervienen con las determinaciones de hechos formuladas por una agencia administrativa si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. López v. Administración, supra; Martínez v. Rosado, supra; Polanco v. Cacique Motors, res. en 30 de junio de 2005, 165 D.P.R. _ (2005), 2005 J.T.S. 101; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70 (2000). La evidencia sustancial para sostener la actuación administrativa es aquélla que una mente razonable puede aceptar como adecuada para sostener una conclusión. La intervención del Tribunal está limitada a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. Id
La revisión de las determinaciones de hechos está limitada por lo establecido en la See. 4.5 de la Ley Núm. 170, supra, que dispone lo siguiente:

“El Tribunal podrá conceder el remedio apropiado si determina que el peticionario tiene derecho a un remedio.

Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo(Énfasis Nuestro)
Siempre y cuando estén sustentadas por evidencia sustancial que obre en el récord administrativo, las determinaciones de hechos formuladas por la agencia serán sostenidas. Asoc. de Vecinos Tulip v. Junta de Planificación, supra. Esto es así, porque las decisiones de las agencias administrativas tienen a su favor una presunción de legalidad y corrección, la cual debe ser respetada por los tribunales mientras la parte que la impugna no produzca suficiente evidencia como para derrotarla. Id. No obstante, las conclusiones de derecho son revisables en todos sus aspectos. Esto no significa, sin embargo, que al ejercer su función revisora, el tribunal pueda descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Al contrario, el Tribunal Supremo ha reiterado consistentemente antes y después de la vigencia de la Ley Núm. 170, supra, que, de ordinario, los tribunales deben deferencia a las interpretaciones y conclusiones de los organismos administrativos. Si de la totalidad del récord administrativo se sostienen las determinaciones adoptadas por el foro administrativo, los tribunales no deben sustituirlas por su propio criterio. Id.
Por otro lado, surge de manera meridiana que entre la prueba aportada por el recurrente se encontraban los *810 documentos aludidos. Sobre el particular, en ausencia de la exposición narrativa de la prueba en el presente recurso o récord alguno al respecto, los planteamientos del recurrente no sirven para derrotar la presunción de corrección que recae sobre la determinación en el caso de autos.
En conclusión, en el caso de autos, el recurrente no ha demostrado que el D.R.N.A. hubiera actuado arbitrariamente, ilegal o en forma tan irrazonable que la actuación constituya un abuso de discreción.
y
Por los fundamentos antes expuestos, se confirma la Resolución recurrida.
Así lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 25

1. La doctrina de incuria ha sido definida por el Tribunal Supremo de Puerto Rico como: “(d)ejadez o negligencia en el reclamo de un derecho, los cuales en conjunto con el transcurso del tiempo y otras circunstancias que causan perjuicio a la parte adversa, opera como un impedimento en una corte de equidad". Com. de Ciudadanos al Rescate de Caimito v. G. P. Real Property, S.E., res. en 4 de junio de 2008, 174 D.P.R. _ (2008), 2008 J.T.S. 125; Maldonado v. Junta de Planificación, res. en 10 de mayo de 2007, 171 D.P.R. _ (2007), 2007 J.T.S. 92; Colón Torres v. A.A.A., 143 D.P.R. 119, 124 (1997); Aponte v. Srio. de Hacienda, E.L.A., 125 D.P.R. 610, 618 (1990).
En nuestra jurisdicción —a pesar de nuestra tradición civilista — , se ha incorporado la doctrina de incuria. La misma, opera con particular vigor en aquellos casos relativos a remedios extraordinarios incorporados a nuestro ordenamiento del derecho angloamericano. Ello no obstante, tratándose de acciones civiles ordinarias, rige el término prescriptivo dispuesto por ley. Aponte v. Srio. de Hacienda, supra; J.R.T. v. P.R. Telephone Co., Inc., 107 D.P.R. 76 (1978); Saavedra v. Central Coloso, Inc., 85 D.P.R. 421, 423 (1962); F. Rodríguez Hnos. & Co. v. Aboy, 66 D.P.R. 525, 540 (1946). Así pues, la incuria bien puede ser caracterizada —en cierto modo— como un tipo de prescripción extraordinaria.
Sin embargo, la doctrina de incuria no opera como un simple término prescriptivo. De ordinario, la aplicación de la doctrina requerirá que al demandado se le haya puesto en desventaja por razón del tiempo transcurrido. Hernández Agosto v. Romero Barceló, 112 D.P.R. 407, 417 (1982). Precisando los parámetros del ámbito operativo de la doctrina de incuria, el Tribunal Supremo de Puerto Rico ha expresado que: “(e)n dicha doctrina no basta el mero transcurso del tiempo para impedir el ejercicio de la causa de acción, sino que deben evaluarse otras circunstancias antes de decretar la desestimación del recurso instado. Circunstancias tales como: (i) la justificación, si alguna, de la demora incurrida; (ii) el perjuicio que ésta acarrea; y (iii) el efecto sobre los intereses privados o públicos involucrados. Asimismo, cada caso deberá ser examinado a la luz de los hechos y circunstancias particulares. ” Maldonado v. Junta de Planificación, supra; Pérez, Pellot, v. J.A.S.A.P., 139 D.P.R. 588 (1995); Rivera v. Depto. de Servicios Sociales, 132 D.P.R. 240 (1992); García v. Adm. del Derecho al Trabajo, 108 D.P.R. 53 (1978).
Los casos deberán ser examinados a la luz de sus hechos y circunstancias particulares, considerando además que “[sjobre todo es preciso tener en cuenta los méritos y demás circunstancias del caso específico, ya que la doctrina de incuria sigue vinculada a la idea fundamental de la equidad: se acude a la ‘razón ’ y a la ‘conciencia ’ para encontrar soluciones justas, apartándose del rigorismo intransigente de los términos fatales. ” Pueblo v. Valentín, 135 D.P.R. 245 (1994).

2. Véase, Ley Núm. 121 de 1 de noviembre de 1994, así como la decisión del Tribunal Supremo en Fed. Pese, de Playa Picúas v. J.P., 148 D.P.R. 406 (1999).