En el Tribunal Supremo de Puerto Rico

| Federación de Pescadores de Playa Picúa<br>Apelante<br><br>V.<br><br>Junta de Planificación<br>Apelado | Apelación<br><br>99TSPR82 |
|---|---|

Número del Caso: AA-96-8

Abogados de la Parte Apeltante:     Lcdo. Luis E. Maldonado Guzmán
                                    Lcdo. Armando Cardona Acaba

Abogado de la Parte Apelada:     Lcdo. César E. Mercado Vega

Agencia: Junta de Planificación

Fecha: 5/27/1999

Materia:

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

En el Tribunal supremo de puerto rico

Federación de Pescadores de
Playa Picúa

        Apelante

        v.                               AA-96-8        APELACIÓN

Junta de Planificación

        Apelada


OPINIÓN DEL TRIBUNAL EMITIDA POR EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ

            En San Juan, Puerto Rico, a 27 de mayo de 1999


        Resolvemos en el presente recurso que la Junta de Planificación ("Junta") estaba obligada, por imperativo de ley, a efectuar una declaración de impacto ambiental ("DIA") antes de promulgar un reglamento aplicable al sector Punta Picúa. Por ello, concluimos que el reglamento impugnado es nulo.

I

        De entrada, debemos reseñar el hecho de que este pleito tiene múltiples facetas. La antesala fue Federación de Pescadores v. U.S. Industries, Opinión y Sentencia de 14 de marzo de 1994. Asimismo, actualmente se encuentra pendiente, ante la consideración del tribunal de primera instancia, un

recurso presentado por la Federación de Pescadores en el que se cuestiona la constitucionalidad de la ley que permitió la adopción del reglamento que nos concierne aquí. En aras de la brevedad y claridad, procedemos a reproducir sólo los hechos pertinentes a la controversia que hoy nos atañe.

La Ley Núm. 121 de 1$^{ro}$ de noviembre de 1994, 12 L.P.R.A. sec. 401 et seq., establece la "nueva" política pública ambiental para el Sector de Playa Las Picúas. Dicha ley, entre otras cosas, derogó la Ley Núm. 1 de 23 de febrero de 1983, según enmendada.[1] En lo pertinente a la controversia ante nos, el Artículo 3 de la Ley Núm. 121, 4 L.P.R.A. sec. 403, ordenó a la Junta a adoptar, con el asesoramiento del Departamento de Recursos Naturales y Ambientales, un

> "...plan de manejo y un reglamento especial para el sector Playa las Picúas..., sin que se menoscaben los derechos de los propietarios privados de las fincas de veinticinco (25) cuerdas o más inscritas en el Registro de la Propiedad en el sector, en armonía con las disposiciones aplicables a la zona comprendida en la designación de la Reserva Natural del Río Espíritu Santo y de cualquier zona adyacente que la Junta estime necesario o conveniente incluir, dentro de los once (11) meses siguientes a la aprobación de este Capítulo. La Junta armonizará el reglamento que aquí se le instruye adoptar con su Reglamento Número 17 y con el Plan del Manejo de Zona Costanera aprobado por el Gobernador de Puerto Rico en el año 1978."

---

[1] La ley derogada ordenó la expropiación de la franja de terrenos  ubicada entre el Camino Las Picúas y la zona marítimo terrestre de esa playa. El estatuto fue derogado por ausencia de fondos disponibles para la expropiación.

Actuando conforme al mandato legislativo, la Junta inició el proceso para confeccionar el Plan y Reglamento. En síntesis, el proceso para adoptar el reglamento fluyó así: primero, la Junta, en vista pública, preparó y presentó un borrador preliminar del "Plan y Reglamento". Luego, ofreció la oportunidad de participar y presentar sugerencias a otras entidades gubernamentales, propietarios de terrenos y grupos de interés, entre otros.

Merece señalarse que la Junta de Calidad Ambiental, a través de su presidente, Héctor Russe Martínez, hizo constar que era necesario un "... análisis abarcador de los aspectos ambientales del Plan y Reglamento propuestos, a fin de reunir elementos de juicio que puedan aportar material valioso para la toma de decisiones en este caso." A renglón seguido, añadió que la Junta, "...como agencia proponente[,] tiene la prerrogativa de determinar el tipo de documento ambiental a prepararse y circularse, para así cumplir con el Artículo 4(c) de la Ley de Política Pública Ambiental."[2]

Finalmente, en el 1995, la Junta aprobó el "Plan y Reglamento Especial para el sector Punta Picúa", el cual fue aprobado por el Gobernador de Puerto Rico el 30 de noviembre de 1995 y radicado ante el Departamento de Estado

---

[2] Nótese que, según la Junta de Calidad Ambiental, la Junta de Planificación tenía que cumplir con el Artículo 4(c) de la Ley de Política Pública Ambiental; la prerrogativa consistía en el tipo de análisis de realizaría la agencia para cumplir con la Ley.

el 23 de abril de 1996, Reglamento Núm. 5415. <u>Al adoptar el Reglamento la Junta no efectuó una "declaración de impacto ambiental"</u>.

Así las cosas, la Federación de Pescadores de Playa Picúa, ("Federación"), solicitó <u>reconsideración</u> ante la Junta. Argumentó que el recién estrenado Reglamento fue aprobado sin que se efectuara una declaración de impacto ambiental. La Junta rechazó esta contención, despachando el asunto con un escueto no ha lugar.

Inconforme, acudió ante este Tribunal la Federación de Pescadores. Plantea ante nos el mismo error invocado ante la Junta, a saber: que era necesaria la preparación de una <u>declaración de impacto ambiental</u> antes de aprobar el Plan y Reglamento especial para el sector Punta Picúa.

Le concedimos un plazo a la Junta para que se expresara al respecto. Ésta así lo hizo. Evaluados los argumentos de las partes, resolvemos.

II

En su comparecencia ante este Tribunal, la Junta plantea que, con relación al Sector de Playa las Picúas, no estaba obligada a cumplir con el Artículo 4(c) de la Ley de Política Pública Ambiental. Arguye que aprobó el Reglamento acorde con la Ley Núm. 121[3] y el Reglamento Núm. 17 de Planificación. Plantea que la Ley de Política Pública Ambiental, aplicable al Sector Playa las Picúas, cambió al

---

[3] 12 L.P.R.A. sec. 401 y ss.

aprobarse la Ley Núm. 121 y que, como ésta no la obligaba a hacer una DIA, no tenía que hacerla. Por último, la Junta indica que todas las gestiones realizadas al aprobar el Reglamento representan un equivalente a los resultados que obtendrían de la DIA por lo que, a su juicio, cumplieron sustancialmente con el requisito en cuestión. Veamos.

III

La política pública ambiental en Puerto Rico quedó establecida en el 1970. Para ese entonces, a través de la Ley Núm. 9[4], se instrumentó, en parte, el mandato impuesto por la Sección 19 del Artículo VI de nuestra Constitución. Misión Industrial v. Junta de Planificación, 98 TSPR 86; Salas Soler v. Srio. de Agricultura, 102 D.P.R. 716, 723 (1974). Como expresáramos recientemente, este estándar constitucional "no es meramente la expresión de un insigne afán, ni constituye tampoco sólo la declaración de un principio general de carácter exhortativo. Se trata, ..., de un mandato que debe observarse rigurosamente, y que prevalece sobre cualquier estatuto, reglamento u ordenanza que sea contraria a éste." Misión Industrial v. Junta de Calidad Ambiental, 98 TSPR 85.

La Ley, luego de establecer los principios que intenta salvaguardar, establece uno de los pilares de la Ley de Política Pública Ambiental: el tan invocado Artículo 4. En

---

[4] Aprobada el 18 de junio de 1970, 12 L.P.R.A. sec. 1121 et seq..

síntesis, este Artículo ordena que, <u>las leyes y los</u> <u>reglamentos</u> deben ser interpretados, implementados o administrados <u>en estricta conformidad</u> con la Ley de Política Pública Ambiental. El Inciso (c) del referido Artículo 4 es el que impone la obligación, a la legislación o reglamento propuesto, de que se realice, "antes de efectuar cualquier acción o promulgar cualquier decisión gubernamental que afecte significativamente la calidad del medio ambiente, una declaración escrita y detallada..."[5] en torno, entre otras cosas, al impacto ambiental.[6]

La frase "cualquier acción" refleja la intención del legislador de abarcar un sinnúmero de actuaciones que llevan a cabo las agencias que pueden causar un impacto sobre el ambiente. Sin embargo de existir duda en cuanto a si determinada actuación de una agencia se considera una "acción", la sección 2.1a del Reglamento sobre Declaraciones de Impacto Ambiental creado por la Junta de Calidad Ambiental con el fin de implementar lo requerido por el Art. 4, enumera varias actividades que se han de

_____

[5] La Junta de Planificación no cuestiona el hecho de que, al aprobar el Plan y Reglamento, no se afectará significativamente el ambiente.

[6] Nótese que el requisito nace de la ley, no de un reglamento. En adición a dicho requisito de ley, la sección 5.2 del Reglamento sobre Declaración de Impacto Ambiental, Reglamento Núm. 3106, requiere una DIA para cualquier proyecto cuya ubicación sea en un humedal o que pueda afectar, de forma significativa, el ambiente. El Sector Punta Picúa es uno de los veintiseis humedales con que cuenta nuestra Isla.

consderar "acciones" para efectos de la Ley de Política

Pública Ambiental. Una acción incluye,

> [l]a toma de decisiones o cualquier otro tipo de
> actividad que auspicie, fomente o proponga una
> agencia del Estado Libre Asociado de Puerto Rico,
> tales como, actividades de expedir licencias,
> concesiones o permisos, <u>reglamentar o formular
> normas</u>, asignar o liberar fondos, realizar
> cambios sustanciales en la política pública de
> las agencias y sus programas, aprobar proyectos a
> través de permisos o cualquier otra decisión
> reguladora, zonificar, rezonificar y presentar
> propuestas de legislación. (Énfasis suplido.)

El cumplimiento del mencionado Inciso (c) del Artículo

4 de la Ley de Política Pública Ambiental, recae en la

agencia que somete la acción propuesta. <u>García Oyola</u> v.

<u>J.C.A.</u>, Opinión y Sentencia de 21 de febrero de 1997; <u>Salas

Soler</u> v. <u>Srio. de Agricultura</u>, <u>ante</u>. Al cumplir con la

declaración, el proponente tiene la obligación de

considerar y detallar por escrito todas las consecuencias

ambientales significativas vinculadas a la acción

propuesta. Esto tiene un propósito dual: (1) que se

consideren a fondo las consecuencias ambientales

significativas de la acción o proyecto que se contempla y

(2) que se informe a las partes concernidas de las

consecuencias ambientales aludidas para que todos puedan

tomar la acción que estimen pertinente. <u>Misión Industrial

v. Junta de Calidad Ambiental</u>, <u>ante</u>.[7]

---

[7] Recientemente, describimos la importancia de la Junta de Calidad Ambiental con relación a la política pública ambiental del país. Expresamos que "...la labor de fiscalización no sólo queda en manos de una entidad

Al determinar si cierta actividad tendrá un impacto ambiental significativo, lo que se mide es

> "[e]l efecto substancial (positivo o negativo) ... sobre uno o varios elementos del ambiente, tales como, pero sin limitarse a, una población biótica, un recurso natural, el ambiente estético o cultural, la calidad de la vida, la salud pública, los recursos renovables y no renovables; o que pueda sacrificar los usos beneficiosos del ambiente a largo plazo a favor de los usos a corto plazo o viceversa...". Reglamento sobre Declaraciones de Impacto Ambiental, Junta de Calidad Ambiental de 1ro de junio de 1984.

¿Tenía la Junta de Planificación que cumplir con el aludido Artículo 4(c)?[8]

La contención principal de la Junta, como hemos visto, es que la Ley Núm. 121, de facto, enmendó la Ley de Política Pública Ambiental; esto, pues el Plan y Reglamento fue aprobado acorde con las disposiciones de la Ley Núm. 121 la cual, en su Artículo 3, establece que "[l]a Junta armonizará el reglamento que aquí se le instruye adoptar

---

distinta a la que propone el proyecto en cuestión, sino además que queda en manos de una entidad especializada en asuntos ambientales, cuya función principal es precisamente velar por el fiel cumplimiento de la política pública ambiental de Puerto Rico. Se asegura así la objetividad y el profesionalismo que es necesario para que se lleve a cabo el mandato constitucional y estatutario de usar y conservar los recursos naturales adecuadamente. Se asegura además, que cada declaración de impacto ambiental sea objeto de un doble examen, lo cual es una garantía adicional para al cumplimiento con el mandato constitucional." Misión Industrial v. Junta de Calidad Ambiental, ante.

[8] Para determinar si era necesaria la preparación de una DIA, el proponente tenía que efectuar una Evaluación Ambiental. Para un análisis detallado del proceso, véase Rodríguez, Luis E., Derecho Ambiental, 67 Núm. 4 Rev. Jur. U.P.R. 907 (1998).

con su Reglamento Núm. 17 y con el Plan del Manejo de Zona Costanera...". El argumento de la Junta parte de la premisa de que, al no exigirse que cumpliera con las disposiciones de la Ley de Política Pública Ambiental[9], ella no tenía que hacer una DIA al reglamentar el Sector de Playa Picúas.

Argumenta la Junta, además, que la Federación de Pescadores se equivoca al interpretar el Artículo 4(c) de la Ley de Política Pública Ambiental. Para "ilustrar" su punto, la Junta plantea que "[l]a herramienta principal de la Ley 9 lo es el Artículo 4(c) y éste sólo faculta a J.C.A. a preparar un reglamento." Añade, en su alegato, la Junta, que "el proceso ambiental [al adoptar un reglamento] es responsabilidad de la agencia proponente en este caso la Junta y la J.C.A. no tiene facultad para decidir sobre la deseabilidad de un reglamento adoptado por una agencia proponente cuyo propósito al adoptarlo es precisamente establecer un balance entre los recursos naturales y el desarrollo económico."

No estamos de acuerdo. No hay duda que el responsable del cabal cumplimiento del proceso ambiental, al adoptar un reglamento, es la agencia proponente; sin embargo, su responsabilidad es para con la Ley de Política Pública Ambiental y no queda a discreción de la agencia proponente cumplir con ésta o no.[10] No estamos ante dos reglamentos

---

[9] Ley Núm. 9 de 18 de junio de 1970, 12 L.P.R.A. sec. 1121 et seq..

[10] Además, véase nota al calce núm. 3.

promulgados por distintas agencias; tampoco ante la aparente imposición de reglamentos de la Junta de Calidad Ambiental a la Junta de Planificación. Por el contrario, nos encontramos ante el mandato expreso de la Asamblea Legislativa para establecer la Política Pública del Estado Libre Asociado.[11]

Hace unos veinte y cinco años, este Tribunal se enfrentó a una situación extremadamente similar a la que hoy nos ocupa. En Salas Soler v. Srio. de Agricultura, ante, a la pág. 720, resolvimos que cierto reglamento que, al igual que aquí, tenía el potencial de afectar significativamente al ambiente, tenía que cumplir, antes de que fuera promulgado, con el Artículo 4(c) de la Ley de Política Pública Ambiental.

Por ello, el asunto ante nos se reduce a determinar si la Ley Núm. 121, al encomendar a la Junta de Planificación la adopción de un reglamento para Playa Picúas, eximió a dicho sector de la Ley de Política Pública Ambiental diseñada para el país hace más de dos décadas. Si la Junta, al promulgar el reglamento, estaba exenta de cumplir con el

---

[11] El Artículo 2 de la Ley Núm. 9 describe los cuatro propósitos de la Ley. Al esbozar sus argumentos, la Junta aparenta entender que la Ley Núm.9 simplemente creó la Junta de Calidad Ambiental y que es ésta, a través de su Reglamento sobre DIA's, quien intenta imponer su reglamento sobre la Junta de Planificación.

Artículo 4(c) de la Ley de Política Pública Ambiental, el mismo sería válido, de lo contrario, su nulidad es clara.[12]

La correcta solución del presente caso hace necesario que reseñemos brevemente algunos postulados de hermenéutica legal. Como es sabido, las diferentes secciones de un estatuto deben ser interpretadas las unas con las otras, esto es, en conjunto, como un todo armónico y efectivo, y no separadas o aisladamente.[13] De igual forma, cuando se trata de leyes que se refieren a una misma materia, o cuyo objeto sea el mismo, éstas deben ser interpretadas refiriéndolas unas a las otras, por cuanto lo que sea claro en una de las leyes pueda ser tomado para explicar lo que resulte dudoso en otra.[14] Por último, al evaluar determinado estatuto, tenemos el deber de interpretar las disposiciones de forma armoniosa, esto para no llegar a resultados absurdos.[15]

Estas normas de hermenéutica son especialmente importantes en casos como el de autos, en el cual la

---

[12] Aunque nadie lo ha planteado, es obvio que "[l]as reglas o reglamentos aprobados por las agencias administrativas, ..., están sujetos continuamente a la revisión judicial." D. Fernández Quiñonez, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, Forum, 1993, pág. 147-148.

[13] Pueblo en interés del menor L.R.R., 125 D.P.R. 78 (1989); A.R.P.E. v. Ozores Pérez, 116 D.P.R. 816 (1986).

[14] Artículo 18 del Código Civil, 31 L.P.R.A. sec. 18; Pueblo v. Zayas Colón, Opinión y Sentencia de 9 de octubre de 1995; Zambrana Maldonado v. E.L.A., 129 D.P.R. 740, (1992); Riley v. Rodríguez Pacheco, 124 D.P.R. 733 (1989).

Asamblea Legislativa, al encomendar la confección del Plan y Reglamento de Playa Picúas a la Junta de Planificación --mediante la Ley Núm. 121-- no expresó categóricamente si ésta venía obligada a cumplir con las disposiciones de la Ley de Política Pública Ambiental de 1970. Es decir, no tenemos una expresión patente de la intención del legislador cuando encomendó a la Junta de Planificación la elaboración del Plan y Reglamento. En consecuencia, debemos interpretar la legislación en cuestión, conforme las normas de hermeneútica referidas.

A nuestro juicio, el hecho de que la Ley Núm. 121 no obligara ni excluyera a la Junta de Planificación de la obligación de, al adoptar el Plan y Reglamento de Playa Picúas, cumplir con la Ley Núm. 9 --específicamente con el Artículo 4(c)-- no significa que la Junta de Planificación pueda ignorar dicho estatuto. El mero hecho de que la Junta de Planificación sea la agencia encargada de velar por el desarrollo integral de Puerto Rico no es justificación para que haga caso omiso del requisito de las DIA's. Más aún, el hecho de que la Junta sea la encargada de tan importante encomienda no la sitúa en un lugar más alto o prominente dentro del complejo mundo administrativo. El responsable de acatar el mandato vertido en el Artículo 4(c) no es sólo la Junta de Calidad Ambiental; este mandato trasciende estos

---

[15] PARDAVCO, Inc. v. Secretario de Hacienda, 104 D.P.R. 65 (1975).

límites y adquiere tangencia en todas las agencias del E.L.A. y, por disposición expresa, a toda la legislación.

Ni la intención legislativa ni el texto de la Ley Núm. 121 demuestran el deseo o intención del legislador de abandonar la hoy vigente Ley de Política Pública Ambiental. Por el contrario, el historial legislativo de la Ley Núm. 121 demuestra el alto valor ecológico del Sector Punta Picúa y el interés legislativo de protegerlo por considerarlo un baluarte. Así, interpretando en armonía la ley que habilitó el Plan y Reglamento junto a la Ley de Política Pública Ambiental de 1970, tenemos que suplir la laguna de aquélla concluyendo que la Junta tenía que cumplir con el Artículo 4(c) de la Ley de Política Pública Ambiental antes de promulgar el Plan y Reglamento.[16] Esto, ante la evidente realidad de que ambos estatutos persiguen el mismo fin. Normas básicas de hermenéutica legal así nos lo imponen.

Como expresa el profesor Demetrio Fernández "[c]ualquier transgresión a lo pautado por la ley [de Política Pública Ambiental] respecto a los linderos de acción[,] constituye una acción ilícita."[17] Además, véase B.

---

[16] Nótese que la única ley derogada fue la referente a la expropiación. No encontramos forma de, mediante fíat judicial, derogar la Ley de Política Pública Ambiental cuando, claramente, esa no fue la intención de la Asamblea Legislativa. Además, esa no es nuestra función constitucional. E. Bernier y J. Cuevas Segarra, Aprobación e Interpretación de la Leyes en Puerto Rico, 2da ed., San Juan, Publicaciones JTS, 1987, pág. 311.
[17] D. Fernández Quiñonez, op cit., pág. 148.

Schwartz, Administrative Law, 3rd ed., Little Brown & Co., 1991, págs. 171-173.

Por último, debemos puntualizar que la idea salomónica de requerir una DIA es insoslayable. Evidencia de ello lo es el siguiente pasaje:

> Una declaración de impacto ambiental o DIA, asegura que la agencia, al llegar a una decisión, tendrá disponible, y cuidadosamente considerara, información detallada relacionada con el impacto ambiental significativo; además, la DIA garantiza que la información pertinente, estará disponible para el público en general quien también puede jugar un papel importante, tanto en el etapa decisional como en la implementación de la decisión. Edmonds Institute v. Babbitt, 1999 WL 183802 (D.C. Cir.) citando a Methow Valley Citizens Councel 490 U.S. at 349. (Énfasis suplido.)

El Noveno Circuito federal se ha expresado en términos similares:

> El propósito de N.E.P.A. (génesis de nuestra Ley de Política Pública Ambiental) es asegurarse de que la agencia tenga a su disposición toda la información pertinente sobre el impacto ambiental de la acción propuesta antes que se embarque en dicha acción. Bicycle Trails Council of Marin v. Babbitt, 82 F. 3d 1445 (9th Cir. 1996). (Énfasis suplido.)

En conclusión, la Junta de Planificación no podía ignorar, arbitraria y caprichosamente, el requisito exigido por el Artículo 4(c) de la Ley de Política Pública Ambiental. Véase: Natural Resources Defense Council, Inc. v. Herrington, 768 F. 2d 1355, 1432-1433 (D.C. Cir. 1985); Public Citizen v. N.H.T.S.A., 848 F. 2d 256, 266 (D.C. Cir. 1988).

IV

Por los fundamentos que anteceden, procede dictar Sentencia anulando el Plan y reglamento especial para el sector Punta Picúas promulgado por la Junta de Planificación; ello por incumplimiento craso con el Artículo 4(c) de la Ley de Política Pública Ambiental.

Se dictará Sentencia de conformidad.


**FRANCISCO REBOLLO LÓPEZ**
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

**Federación de Pescadores de
Playa Picúa**

 **Apelante**

   **v.**        **AA-96-8**   **APELACIÓN**

**Junta de Planificación**

 **Apelada**

**SENTENCIA**

**En San Juan, Puerto Rico, a 27 de mayo de 1999**

   Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente, se dicta Sentencia anulando el Plan y reglamento especial para el sector Punta Picúas promulgado por la Junta de Planificación; ello por incumplimiento craso con el Artículo 4(c) de la Ley de Política Pública Ambiental, al no haber preparado la Junta una declaración de impacto ambiental.

   Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Andréu García no intervino.

        **Isabel Llompart Zeno
        Secretaria del Tribunal Supremo**