# 2006 DTA 51

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGIÓN JUDICIAL DE SAN JUAN**
**PANEL II**

HORMIGONERA CHAPARRO, INC., ING. SANTIAGO VARELA
Recurrentes

v.

JUNTA DE PLANIFICACIÓN
Recurrida

SR. NELSON GUTIÉRREZ E ING. LUIS BAIGES CHAPEL
Proponente-Recurrido

Núm. KLRA-04-00882

San Juan, Puerto Rico, a 22 de febrero de 2006

Panel integrado por su Presidenta, la Juez Bajandas Vélez,
y los Jueces Aponte Hernández y Juez González Vargas

Aponte Hernández, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

La recurrente, Hormigonera Chaparro, Inc., nos solicita que revoquemos la resolución emitida el 30 de agosto de 2004 por la Junta de Planificación de Puerto Rico. Mediante la misma, dicho foro administrativo autorizó la Consulta Número 2001-02-0282-JPU para la ubicación de un proyecto de carácter industrial en el Barrio Llamadas del Municipio de Isabela, consistente de una fábrica de bloques y una posterior enmienda para darle continuidad al uso del silo de cemento existente.

Posteriormente, interpuso *Moción Solicitando Orden en Auxilio de Jurisdicción*, solicitando la paralización de los efectos del permiso de uso número 04PU9-00000-05903 expedido por la Administración de Reglamentos y Permisos para la operación de la cantera y hormigonera Gutiérrez, hasta tanto este Tribunal resolviera el recurso de revisión judicial.

Por los fundamentos que expondremos, se confirma la resolución recurrida y se declara no ha lugar la moción en auxilio de jurisdicción.

## I

El 25 de abril de 2001, por conducto del ingeniero Luis Baigés Chapel (en adelante, Ing. Baigés o parte proponente), el señor Nelson Gutiérrez sometió a la consideración de la Junta de Planificación de Puerto Rico (en adelante, Junta) una consulta de ubicación de carácter industrial, consistente de una fábrica de bloques. El proyecto se llevaría a cabo en un predio de terreno de 5 cuerdas que forma parte de una finca con cabida de 75 cuerdas, donde actualmente opera una cantera y una hormigonera propiedad del señor Nelson Gutiérrez. Los terrenos objeto de la consulta están comprendidos dentro de un área no zonificada. Así se desprende del Mapa de

Zonificación Núm. 008-000 del Municipio de Isabela, según enmendado el 22 de enero de 1997 y con vigencia del 3 de agosto de 1997. El área es una con parámetros industriales donde operan, con los correspondientes permisos, los siguientes usos: la cantera y hormigonera, dos talleres de mecánica y una gasolinera.

Luego de publicar el aviso correspondiente, la Junta celebró vista pública el 20 de agosto de 2002. Mediante documento con fecha de 29 de agosto de 2002, Hormigonera Chaparro, Inc. (en adelante, Hormigonera Chaparro) solicitó intervención en el proceso y la notificación de los documentos correspondientes a la consulta. La Junta aceptó la intervención el 11 de septiembre de 2002 y ordenó la notificación de los documentos.

Previo a que se tomara una determinación sobre el proyecto propuesto, el 18 de julio de 2003, el Ing. Baigés sometió una solicitud de enmienda a la consulta para darle continuidad al uso de un silo de cemento existente, de manera que se pudiera transferir el cemento para mezclarlo con agregados en un camión ligadora para producir hormigón premezclado. Indicó que esa operación no requería construcción alguna, pues todo el trabajo se realizaría en la parte inferior del silo de cemento existente. El 10 de septiembre de 2003, la Junta acordó acoger la enmienda y dejó en suspenso la consulta para que la parte proponente sometiera los documentos necesarios para la celebración de la vista pública. Entre éstos, el Ing. Baigés sometió una solicitud de enmienda al documento ambiental DN-91-1161(ARPE).

Entretanto, Hormigonera Chaparro alegó no haber sido notificada de la enmienda. Solicitó su notificación, así como la preparación de una Declaración de Impacto Ambiental (DIA), alegando que el formulario ambiental sometido por el proponente no incluyó el impacto ambiental acumulativo de las operaciones existentes en el predio objeto de la consulta, tales como la extracción de material de corteza terrestre, una cantera y una hormigonera. Mediante resolución de 9 de diciembre de 2003, la Junta ordenó al proponente notificar la enmienda del proyecto propuesto y declaró no ha lugar la solicitud para que el Ing. Baigés sometiera la DIA.

La vista pública para la enmienda a la consulta se celebró el 6 de abril de 2004. Durante el proceso se informó para récord los comentarios que emitieron las agencias que participaron. Dichos comentarios fueron recogidos en la determinación de hechos número 17. En el inciso "h" de la indicada determinación se expresó: ■

*"La Junta de Calidad Ambiental*

*i. En su carta del 17 de julio de 2002 indicó:*

*La Junta de Calidad Ambiental ha analizado el documento ambiental sometido para el proyecto de referencia. El mismo consiste en el establecimiento de una bloquera en un predio de terreno de 5 cuerdas dentro de una finca de 75 cuerdas donde actualmente se opera la Cantera del Sr. Nelson Gutiérrez y una hormigonera.*

*El documento ambiental sometido indica que la Administración de Reglamentos y Permisos (ARPE) había sometido previamente un documento ambiental para evaluar los impactos asociados a la Cantera Nelson Gutiérrez. El mismo corresponde a la codificación DN-91-1161 (ARPE) ENMIENDA. Este fue debidamente evaluado y nuestros comentarios emitidos mediante carta fechada 29 de octubre de 1991. **Entendemos que el mecanismo adecuado para evaluar el proyecto propuesto (establecimiento de bloquera) es mediante una enmienda al documento ambiental original. Dicha enmienda deberá evaluar el impacto acumulativo de la acción propuesta en conjunto con las actividades aprobadas previamente. Además deberá incluir como anejo copia del documento ambiental original.** (Negrillas nuestras.)*

*ii. El 28 de febrero de 2003, por conducto de la Sra. Iris C. Cuadrado Gómez, Directora de Área de Asesoramiento Científico indicó, entre otras cosas, que se reiteraba en los señalamientos y recomendaciones hechos en la carta del 17 de julio de 2002 y que el documento sometido para la instalación de la bloquera, codificado como DN 02-0983(JP) cumple con los requisitos establecidos en el Reglamento de la J.C.A. para el*

*Proceso de Presentación, Evaluación y Trámite de Documentos Ambientales, para ser considerado como una Determinación de Impacto Ambiental No Significativo.*

*Tan pronto recibamos la información solicitada, completaremos nuestra evaluación y emitiremos nuestros comentarios.*

*iii. Mediante carta del 14 de julio de 2003, indicó entre otras cosas que:*

*a. Mediante la Resolución R-03-15-1 del 28 de mayo de 2003 la J.C.A. resolvió declarar no ha lugar la moción titulada "Solicitud de Preparación de Declaración de Impacto Ambiental Preliminar".*

*b. Que la Junta ha cumplido con el Artículo 4(c) de la Ley sobre Política Pública Ambiental, Ley Núm. 9 del 18 de junio de 1970, según enmendada."*

El 30 de agosto de 2004, la Junta autorizó la Consulta Número 2001-02-0282-JPU para la ubicación de un proyecto de carácter industrial en el Barrio Llamadas del Municipio de Isabela, consistente de una fábrica de bloques y la enmienda para darle continuidad al uso del silo de cemento existente. En su resolución, la Junta hizo constar las entidades gubernamentales que endosaron o se manifestaron en torno al proyecto y la oposición por parte de Hormigonera Chaparro. La resolución fue archivada en autos y notificada el 29 de septiembre de 2004.

Inconforme, oportunamente, Hormigonera Chaparro, Inc. acude ante nos señalando que:

*"Erró la Junta de Planificación al aprobar un proyecto industrial de múltiples actividades mediante una determinación de impacto ambiental no significativo sin tomar en consideración el impacto ambiental de dichas actividades en conjunto y el impacto ambiental de otros proyectos en el sector.*

*Erró la Junta de Planificación al iniciar en el presente caso un proceso de zonificación indirecta mediante consulta de ubicación, sin facultad en ley para ello, ya que las leyes de planificación no permiten dicho tipo de proceso indirecto."*

En síntesis, Hormigonera Chaparro sostiene que la evaluación ambiental del proyecto propuesto no incluyó las actividades que actualmente se realizan en el mismo predio, las cuales, en conjunto, representan un impacto ambiental significativo que, según el Artículo 4(c) de la Ley sobre Política Pública Ambiental, requiere una Declaración de Impacto Ambiental (DIA) que haga referencia a tales operaciones. También aduce que el mecanismo de consulta de ubicación no puede utilizarse para zonificar por primera vez un predio aún no zonificado.

En oposición, el señor Nelson Gutiérrez y el Ing. Baigés alegan que la Solicitud de Enmienda al Documento Ambiental DN-91-1161(ARPE) indica claramente que en la finca objeto de la consulta actualmente opera una cantera y una hormigonera, propiedad del señor Nelson Gutiérrez, y que dichas operaciones cuentan con permiso de uso y con permiso de fuente de emisión para operar. Además, el 14 de julio de 2003, la Junta certificó el cumplimiento con el Artículo 4(c) de la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, según enmendada. El documento ambiental fue aprobado con la determinación de impacto ambiental no significativo.

En cuanto al segundo señalamiento de error, alegan que la Junta no enmendó el mapa de zonificación del sector, sino que autorizó el proyecto propuesto sujeto a los parámetros de un distrito de zonificación I-2 (industria pesada), determinación que no significa que se ha zonificado el área y, conforme su Reglamento de Procedimientos Adjudicativos, está dentro del marco de discreción de la Junta.

Por su parte, la Junta reprodujo los planteamientos del señor Nelson Gutiérrez y señaló que, a pesar de habérsele notificado de su derecho a apelar, Hormigonera Chaparro no solicitó la reconsideración de la determinación que le denegó su solicitud para que el Ing. Baigés preparara la DIA, razón por la cual dicha decisión era final.

El 13 de diciembre de 2004, Hormigonera Chaparro interpuso *Moción Solicitando Orden en Auxilio de Jurisdicción*. Alegó que el 12 de noviembre de 2004 la Administración de Reglamentos y Permisos (en adelante, ARPE) expidió el permiso de uso número 04PU9-00000-05903 para la operación de la cantera y hormigonera Gutiérrez. Solicitó la paralización de los efectos de dicho permiso hasta tanto este Tribunal resolviera el recurso de revisión judicial. Arguye que ARPE expidió el permiso sin que se hubiera autorizado la DIA-Final, ya que dicha declaración de impacto ambiental está siendo objeto de impugnación mediante el presente recurso de revisión judicial. Fundamentó su posición en lo resuelto en *Mun. de San Juan v. J.C.A.,* 152 D.P.R. 673 (2000), a los efectos de que el proceso de preparación de la DIA termina cuando concluye el proceso de revisión judicial en que se impugna el documento.

Concedimos hasta el 17 de diciembre de 2004 para que las partes recurridas fijaran su posición en cuanto a la moción en auxilio de jurisdicción. Las partes comparecieron conforme ordenado, alegando que no fueron debidamente notificados, conforme a la Regla 79(E) de nuestro Reglamento, y que tampoco se notificó a ARPE, agencia cuyo permiso se cuestiona. Mediante resolución emitida el 17 de diciembre de 2004, se ordenó que Hormigonera Gutiérrez acreditara el cumplimiento con el requisito de notificación dispuesto en la Regla 79(E) de nuestro Reglamento. No obstante la devolución de la notificación de la referida orden, el señor Nelson Gutiérrez presentó su oposición a la moción en auxilio de jurisdicción. La Junta también compareció.

Con el beneficio de la comparecencia de todas las partes, resolvemos.

## II

La Constitución de Puerto Rico establece que *"será política pública del Estado Libre Asociado de Puerto Rico la más eficaz conservación de los recursos naturales, así como el mayor aprovechamiento de los mismos para el beneficio general de la comunidad...".* 1 L.P.R.A. Art. VI, sec. 19. Véase, además, *Mun. de Loíza v. Sucns. Suárez, et al.,* 154 D.P.R. 333, 348 (2001). A tenor con este mandato constitucional, la Asamblea Legislativa aprobó la Ley sobre Política Pública Ambiental, Ley Núm. 9 de 18 de junio de 1970, 12 L.P.R.A. sec. 1121 *et seq.*, e impuso a la Junta de Calidad Ambiental la responsabilidad de implantar las disposiciones de esta ley y de fiscalizar el cumplimiento de la misma. *Ocean View v. Proy. Reina del Mar*, **2004 J.T.S. 59**, pág. 885; *Mun. de San Juan v. Bosque Real, Inc.*, **2003 J.T.S. 33**, pág. 635; *T-JAC, Inc. v. Caguas Centrum Limited,* 148 D. P.R. 70, 91-92 (1999). La referida ley impone en su Artículo 4(c) a la instrumentalidad pública con jurisdicción sobre alguna propuesta la obligación de realizar una declaración escrita y detallada sobre el impacto ambiental antes de *"efectuar cualquier acción o promulgar* cualquier decisión gubernamental que afecte significativamente la calidad del medio ambiente".* ■ 12 L.P.R.A. sec. 1123. Véase, además, *Mun. de San Juan v. J.C.A., supra,* págs. 710-711;, *Fed. Pesc. Playa Picúas v. J.P.,* 148 D.P.R. 406, 413 (1999); *Misión Industrial v. J.C.A.,* 145 D.P. R. 908, 922 (1998); *García Oyola v. JCA,* 142 D.P.R. 532, 545 (1997); *Salas Soler v. Srio. de Agricultura*, 102 D. P.R. 716, 720 (1974). Dicha ley exige se incluya una declaración escrita y detallada sobre: 1) el impacto ambiental; 2) los efectos adversos al ambiente que son inevitables; 3) las alternativas a la acción o decisión propuesta; 4) la relación entre usos locales a corto plazo del medio ambiente y la conservación y mejoramiento de la productividad a largo plazo; y 5) los compromisos irrevocables de recursos envueltos. 12 L.P.R.A. 1124 (c).

El citado Artículo 4(c) establece que en la declaración de impacto ambiental, la agencia proponente tiene la obligación de considerar y detallar por escrito los efectos significativos con respecto al ambiente que estén vinculados a la acción propuesta, como parte de *"un esfuerzo serio y escrupuloso por identificar y discutir todas las consecuencias ambientales de importancia que sean previsibles." Mun. de Loíza v. Sucns. Suárez, et al., supra,* pág. 352; *Misión Industrial v. JCA, supra*, pág. 924.

El Tribunal Supremo ha interpretado que la frase *"cualquier acción"*, para los efectos de la Ley Núm. 9, *supra*, denota la intención de incluir una amplia gama de actividades que puedan causar impacto sobre el medio ambiente, entre ellas, *"actividades de expedir licencias, concesiones o permisos, reglamentar o formular normas, asignar o liberar fondos, realizar cambios sustanciales en la política pública de las agencias y sus programas, aprobar proyectos a través de permisos o cualquier otra decisión reguladora, zonificar, rezonificar y presentar propuestas de legislación." Mun. de Loíza v. Sucns. Suárez, et al., supra*, págs. 349-350; *Federación Pesc. Playa Picúa v. J.P., supra*, pág. 413; *Mun. de San Juan v. J.C.A., supra*, págs. 710-711. Véase, además, la Regla 203 del Reglamento. ■

Con el objetivo de garantizar el cumplimiento de la política pública ambiental establecida en la Ley Núm. 9, *supra*, la Junta promulgó el Reglamento Núm. 6026 Para el Procedimiento de Presentación, Evaluación y Trámite de Documentos Ambientales de 29 de septiembre de 1999 (en adelante, Reglamento). ■ Éste detalla los parámetros que debe cumplir una agencia proponente para asegurar que se ha efectuado el correspondiente análisis ambiental. Regla 202 del Reglamento. La Regla 241 del citado Reglamento establece que toda agencia proponente deberá presentar un documento de Evaluación Ambiental (EA) ante la Junta referente a cualquier acción cubierta por el Reglamento, a menos que haya determinado presentar una DIA o se haya clasificado la acción como una exclusión categórica. Toda EA tiene que tener una determinación de si la acción propuesta conllevará un impacto ambiental significativo o no significativo. Si la determinación es de impacto ambiental significativo, la agencia proponente preparará una DIA, de acuerdo al Capítulo 5 del Reglamento. Si la determinación es de impacto no significativo, la agencia proponente incluirá en la EA un análisis narrativo justificando dicha determinación. Según la Regla 243, luego de evaluar la EA sometida, la Junta emitirá su determinación en cuanto a si la agencia proponente cumplió con los requisitos del Artículo 4(c) de la Ley Núm. 9, *supra*. La Junta, en el ejercicio de su discreción, podrá requerir a la agencia proponente la preparación de una DIA, de considerar que la acción propuesta pueda tener un impacto ambiental significativo.

Deberán detallarse todas aquellas consecuencias ambientales que sean significativas y previsibles. *Misión Industrial de PR v. JCA, supra*. Sin embargo, no se pretende que la agencia proponente examine todo tipo de proyecto alterno que pueda concebirse. Lo esencial es que quede demostrado que el curso de acción propuesto es, en balance, el menor impacto ambiental, a la luz de todos los factores legítimos que son pertinentes. *Mun. de San Juan v J.C.A., supra*, pág. 737. Por tal razón, el criterio para determinar cuáles alternativas deben ser discutidas y con cuánta profundidad, es el de razonabilidad. *Id.*

Le corresponde a la Junta examinar la declaración sometida por la agencia proponente y verificar que se haya cumplido cabalmente con los requisitos sustantivos y procesales fijados por la Ley Núm. 9, *supra. Mun. de Loíza v. Sucns. Suárez, et al., supra*, pág. 352.

### III

Teniendo lo anterior de trasfondo, y antes de aplicar los preceptos legales citados a los hechos del caso de autos, conviene reiterar que en nuestra jurisdicción existe una presunción de regularidad y corrección que acompaña los procedimientos y las decisiones de las agencias administrativas. *Asoc. Res. Pórticos v. Compad, S. E.,* 163 D.P.R. ___ (2004), **2004 J.T.S. 204**, pág. 538; *Henríquez Soto v. Consejo de Educación Superior*, 120 D. P.R. 194, 210 (1987). La persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones. *Id.* Además, la interpretación de una ley le corresponde en primer lugar a las agencias encargadas de su administración; y que son ellas, después de todo, las que en mejor posición están a la hora de armonizar los propósitos de las mismas, con las situaciones de día a día. En atención a ello, se ha otorgado deferencia a la hora de evaluar sus interpretaciones. Interviniendo sólo cuando las actuaciones o determinaciones sean arbitrarias, ilegales o tan irrazonables que su actuación se hubiese constituido en un claro abuso de discreción. *Cruz Negrón v. Adm. de Corrección*, **2005 J.T.S. 39**, págs. 942-943; *Ofic. Proc. Paciente v. Aseg. MCS*, 163 D.P.R. ___ (2004); **2004 J.T.S. 160**, pág. 251; *Asoc. Res. Pórticos v. Compad, S.E.*, pág. 538; *Murphy Bernabé v. Tribunal Superior*, 103 D.P.R. 692, 699 (1975).

## IV

Hormigonera Chaparro señala que erró la Junta al aprobar un proyecto industrial como uno de impacto ambiental no significativo cuando el documento de EA no consideró adecuadamente el impacto acumulativo de las demás actividades que operan en el terreno, ni los otros proyectos del sector. No tiene razón; veamos.

Impacto acumulativo, según la Regla 203 del Reglamento, se entiende como: *"[e]l efecto total sobre el ambiente que resulta de una serie de acciones pasadas, presentes o futuras de origen independiente o común."* La Regla 255 del Reglamento especifica en su inciso A que *"[c]uando se trate de un proyecto o acción que se proponga desarrollar por etapas, se preparará un documento ambiental que incluya todo el proyecto y que discuta los elementos significativos de cada etapa, así como el conjunto de todas éstas"*. Esta disposición prohíbe la fragmentación de un proyecto, de manera que se considere el impacto ambiental de un proyecto en su totalidad y no por pedazos.

El documento de EA en el caso que nos ocupa, en su sección 5, discute extensa y detalladamente los impactos acumulativos del proyecto en cuestión. Esta sección relaciona y discute en conjunto las operaciones de la cantera, la hormigonera y la fábrica de bloques. En específico, se hace un análisis de lo siguiente: el material a extraerse, la clasificación de la extracción en sobrantes, el consumo de roca por año, el impacto sobre el tránsito vehicular, la calidad del aire, la energía eléctrica, el servicio de agua potable, las aguas sanitarias, las vías de acceso, el servicio telefónico, las escorrentías y el ruido. ■ También, se consideró el hecho de que además de la cantera y la hormigonera Gutiérrez, en el sector existen dos talleres de mecánica y una gasolinera. ■

En el presente caso, la Junta determinó que la acción propuesta tiene un impacto ambiental no significativo. ■ Es la Junta como agencia quien tiene el conocimiento especializado y la función de determinar si las declaraciones de impacto ambiental cumplen a cabalidad con los requisitos exigidos en el Artículo 4(c) de la Ley Núm. 9, *supra*. La Junta examinó el análisis presentado en la EA y determinó que se consideró adecuadamente el impacto acumulativo. No encontramos en el expediente evidencia para derrotar la presunción de corrección y regularidad que acompaña esta determinación.

## V

Hormigonera Chaparro argumenta que en el caso de autos, la Junta optó por el método de zonificación indirecta al utilizar la vía de la Enmienda a la Consulta Número 2001-02-0282-JPU para zonificar unos terrenos no zonificados. Tampoco tiene razón. Ello estaría en crasa violación a las Secciones 4.09 y 4.10 del Reglamento de Zonificación de Puerto Rico. Aunque dicho reglamento autoriza el cambio de zonificación mediante consulta de ubicación, la Sección 4.09 del mismo requiere, para los casos en que no se haya autorizado un uso específico, que se notifique a las partes allí indicadas el uso propuesto, así como la intención de cambiar el distrito de zonificación. Para los casos en que ya se ha autorizado y expedido el correspondiente permiso de uso, se requiere igual notificación. También, la parte interesada tiene que someter una copia del permiso de uso certificado y autorizado por la ARPE como evidencia de que el mismo se construyó y se autorizó su uso conforme a las disposiciones de la consulta. Véase, Secciones 4.09 y 4.10 del Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Número 4), según enmendado. ■ Este procedimiento no se observó en el caso que nos ocupa.

Al amparo de las facultadas delegadas en ley, y para evadir la rigidez del esquema de planificación, la Junta estableció el procedimiento de consulta de ubicación. Este procedimiento está gobernado específicamente por la Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, arts. 1-39, según enmendada, 23 L.P.R.A. sec. 62-63j, y el Reglamento de Procedimientos Adjudicativos de la Junta de Planificación, Reglamento Núm. 6031 de 12 de noviembre de 1999 (en adelante, Reglamento de Procedimientos Adjudicativos). ■ El procedimiento constituye una solicitud para que la Junta *"evalúe, pase juicio y tome la determinación que estime pertinente, sobre propuestos usos de terrenos que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas, pero que las disposiciones reglamentarias provee para que se consideren por la*

*Junta de Planificación. **En áreas no zonificadas, incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social, pudiesen afectar, significativamente, el desarrollo de un sector. [...].*" (Énfasis nuestro). Sección 2.00(7) del Reglamento de Procedimientos Adjudicativos.

Al adjudicar una consulta de ubicación, el Tribunal Supremo de Puerto Rico ha advertido que lo propuesto debe estar de acuerdo con las recomendaciones del Plan de Usos de Terrenos, del Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Uso de Terrenos de Puerto Rico, los Mapas de Zonificación, los Mapas de Zonas Susceptibles a Inundaciones, los Planes de Ordenamiento Territorial, los Planes Regionales, el Reglamento de Planificación y otros reglamentos aplicables, el Programa de Inversiones de Cuatro Años, la Ley Núm. 75 de 24 de junio de 1975, según enmendada, conocida como *"Ley Orgánica de la Junta de Planificación de Puerto Rico"*, 23 L.P.R.A. sec. 62 *et seq.,* y la Ley Núm. 81 de 30 de agosto de 1991, según enmendada, conocida como *"Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991"*, 21 L.P.R.A. sec. 4001 *et seq.; López v. Antonio Roig Sucrs., Inc.,* 157 D.P.R. ___ (2002), **2002 J.T.S. 85**; *T-JAC, Inc. v. Caguas Centrum Limited, supra,* págs. 85-86. Asimismo, se tomará en cuenta la localización específica del proyecto, los usos existentes en el sector, la situación de la infraestructura física y social del lugar, los rasgos topográficos, la condición de inundabilidad, la condición del subsuelo, la densidad poblacional, el grado de contaminación del ambiente, la distancia entre los terrenos y otras condiciones sociales, económicas y físicas análogas. *Id.*

De la resolución emitida por la Junta, se desprende que la consulta de ubicación se aprobó sujeto a los parámetros de diseño de un distrito de zonificación I-2 (industrial pesada). Si bien es cierto que los terrenos radican fuera de los límites del área zonificada, el proyecto propuesto armoniza con los usos prevalecientes en el sector. Ello, en vista de que en la finca principal hay un uso de hormigonera con parámetros de zonificación I-2 (industrial pesada) y una cantera con parámetros de zonificación IL-2 (industrial pesado limitado).

No le asiste razón a Hormigonera Chaparro cuando sugiere que mediante el mecanismo de consulta se pretende zonificar un predio que aún no está zonificado. Conforme las disposiciones legales citadas, se permite que la aprobación de una consulta sin que ello equivalga a conceder zonificación al terreno sobre el cual tales actividades se permiten.

Un análisis del expediente ante nuestra consideración revela que la Junta examinó y analizó la propuesta, a la luz de la información suministrada por el Sr. Baigés, de las disposiciones de leyes, reglamentos y normas de planificación vigentes. Somos de opinión que el expediente ante nuestra consideración contiene evidencia sustancial para sostener la determinación de la Junta.

## VI

Por último, en la *Moción Solicitando Orden en Auxilio de Jurisdicción,* Hormigonera Chaparro solicita la paralización de los efectos del permiso de uso número 04PU9-00000-05903 para la operación de la cantera y hormigonera Gutiérrez. Alega que ARPE expidió el permiso sin que se hubiera autorizado la DIA-Final, ya que dicha declaración de impacto ambiental está siendo impugnada en el presente recurso. Fundamentó su posición en lo resuelto en *Mun. de San Juan v. J.C.A., supra.*

En *Mun. de San Juan v. J.C.A., supra,* el Tribunal Supremo aclaró que es necesario contar con una declaración de impacto ambiental adecuada y definitiva antes de que se efectúe cualquier acción gubernamental que pueda impactar el medio ambiente. Indicó que el Tribunal Supremo de Estados Unidos ha resuelto que *"la entidad gubernamental no puede tomar acciones ni decisiones respecto a la legislación hasta que prepare la declaración de impacto ambiental y se termine el proceso que dispone el reglamento para ello'"*. En dicho caso, nuestro Tribunal Supremo concluyó que la aprobación de un anteproyecto por ARPE constituía una *"acción gubernamental"* de las que contempla el Artículo 4(c) de la Ley Núm. 9, *supra,* y que, por lo tanto, la agencia

proponente requería de una DIA-Final previa si la calidad del medio ambiente estaba involucrada de un modo significativo. A tales efectos, expresó que *"[e]llo significa que el proceso de preparación de la DIA debió haber culminado antes de que la ARPE aprobara el anteproyecto. Ello incluye el proceso de revisión judicial de la DIA."* *Id.*, a la pág. 713. En este caso, se resolvió que la ARPE estaba impedida de aprobar el anteproyecto en cuestión por carecer de una DIA-Final definitiva.

Sin embargo, nos percatamos que de los documentos sometidos por Hormigonera Chaparro en apoyo a su moción en auxilio de jurisdicción, surge que el permiso de uso número 04PU9-00000-05903 fue expedido por ARPE para la operación de las facilidades existentes, no para el uso del proyecto objeto de la Consulta Número 2001-02-0282-JPU. De hecho, en el acápite de condiciones especiales, el permiso de uso indica expresamente que *"[n]o se autoriza la operación de la bloquera. Para la misma, se deberá cumplir con lo que establece la Junta de Planificación en su consulta de ubicación y radicar los correspondientes permisos de construcción dentro del término establecido en la consulta."* Véase, el permiso de uso que acompaña la *Moción Informativa* radicada ante este Foro el 14 de diciembre de 2004.

En fin, el uso aprobado por ARPE se refiere a la operación de las facilidades existentes de cantera y hormigonera. No se autorizó el uso para la fábrica de bloques y hormigonera objeto de la Consulta Número 2001-02-0282-JPU. Por tal razón, no procede la paralización de las operaciones de dicho negocio.

## VII

Por los fundamentos que anteceden, se confirma la resolución recurrida y se declara no ha lugar la moción en auxilio de jurisdicción.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones