Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| SUCESIÓN DE MIMOSA RULLÁN DE MARÍN compuesta por María del Carmen, Teresa Eminé, Pedro Juan, Jeannette Rebecca, Luis Guillermo y Jorge Arturo todos de apellidos Rullán Marín; LUIS G. RULLÁN Y OTROS<br><br>Recurridos<br><br>v.<br><br>CONSEJO DE TITULARES COND. EL CENTRO I & II<br><br>Recurrente | KLRA202300489 | *RECURSO DE REVISIÓN* procedente del Departamento de Asuntos del Consumidor<br><br>Querella núm.: C-SAN-2022-00011730<br><br>Sobre: Condominios |
|---|---|---|

Panel integrado por su presidente el juez Rivera Torres, el juez Salgado Schwarz y el juez Pérez Ocasio.

**Rivera Torres, Juez Ponente**

### SENTENCIA
### *NUNC PRO TUNC*

En San Juan, Puerto Rico, a 30 de octubre de 2023.

Comparece ante este Tribunal de Apelaciones, el Consejo de Titulares del Condominio I & II (el Consejo de Titulares o el recurrente), mediante el recurso de epígrafe, y nos solicita que revoquemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor (DACo) el 31 de marzo de 2023, notificada el 28 de abril siguiente. Mediante este dictamen, el foro revisado declaró *Ha Lugar* a la querella instada en contra del recurrente y en su consecuencia, le ordenó pagar $11,000 a "la parte querellante" (los recurridos) por los daños ocasionados al Apartamento 1504.

Por los fundamentos que exponemos a continuación, revocamos la *Resolución* recurrida.

**I.**

Surge del expediente que, el 4 de agosto de 2022, los miembros de la Sucesión de Pedro J. Rullán Rodríguez, la Sra. Mimosa Marín de Rullán (viuda)[1] y el arrendatario Law Offices of Luis G. Rullán, PSC instaron una querella ante el DACo en contra del Consejo de Titulares. En síntesis, alegaron ser los titulares del Apartamento 1504 (Apartamento), el cual colinda con la azotea del Condominio y que, a pesar de sus reclamos, la Junta de Directores se ha negado a compensar los daños causados al interior del mismo. Adujeron que los daños fueron causados por unas filtraciones en el techo. Por ello, solicitaron al DACo que ordenara al Condominio sufragar los gastos de reparación del plafón y la luminaria del Apartamento, así como la limpieza, restauración o sustitución de los pisos manchados. Además, peticionaron el pago de costas y honorarios de abogado.

Ese mismo día, el DACo remitió al Consejo de Titulares el documento intitulado *NOTIFICACIÓN DE QUERELLA,* en el que se le informó el término de veinte (20) días para presentar la contestación.[2] Se le apercibió, además, que de no recibirse en dicho plazo se le <u>anotaría la rebeldía</u>.

El 24 de agosto de 2022, la representación legal del recurrente presentó una *Moción para Asumir Representación Legal y Solicitud de Prórroga,* en la que peticionó hasta el 23 de septiembre posterior para contestar la querella. El 31 de agosto, el foro administrativo emitió una notificación declarando *Ha Lugar* a la moción.

El 22 de septiembre de 2022, la agencia emitió una *NOTIFICACIÓN Y ORDEN,* en la cual indicó lo siguiente: [3]

> El 4 de agosto de 2022 se presentó la querella de epígrafe. De los documentos **presentados no surge que la titularidad del apartamento 1504** pertenezca a la Sra. Mimosa de Rullán ni al Sr. Luis G. Rullán. De las alegaciones surge que la Sra. Mimosa de Rullán es titular junto a su difunto esposo, Pedro J. Rullán

---

[1] Destacamos que el nombre correcto es Mimosa Marín de Rullán.
[2] Véase el Apéndice del Recurso, a la pág. 1.
[3] *Íd.*, a la pág. 16.

> Rodríguez, tal como una Declaratoria de Herederos o un testamento.
>
> Por otra parte, de la querella surge que se solicita se incluya a Law Office of Luis G. Rullán como parte querellante al ser arrendatario. Al no ser titular del apartamento, este foro carece de jurisdicción para atender cualquier reclamo que pueda tener el arrendatario de un apartamento, toda vez que esa legitimación activa pertenece exclusivamente al titular del apartamento. Cónsono con lo anterior, no se permitirá la inclusión de Law Office of Luis G. Rullán como parte querellante.
>
> Se concede un término perentorio de diez días para que la parte querellante **presente la escritura que acredite su titularidad**. De ser parte de una sucesión, deberá presentar ante este foro documento fehaciente que es la sucesión el titular del apartamento **y la autorización de representación de la sucesión ante este Departamento**. Pasado el término sin que se cumpla con nuestra orden, procedemos a desestimar su querella. [Énfasis nuestro.]

El 28 de septiembre de 2022, el Lcdo. Luis G. Rullán Marín, en representación de "la parte querellante", presentó una *Moción en Cumplimiento de Orden,* en la que se incluyó el Certificado de Defunción del Sr. Pedro J. Rullán Rodríguez expedido el 30 de junio de 2004, la Escritura Núm. 18 sobre *Testamento Abierto* otorgada por este el 26 de septiembre de 2001 y certificación del 29 de junio de 2005 expedida por la Oficina de la Directora de Inspección de Notarías del Tribunal Supremo.[4] En la referida moción, se alegó que "[l]a escritura de compraventa del [apartamento], que data del 1969, no ha podido ser localizada. Por ello sometimos, junto a la Querella, los folios digitalizados del Sistema Karibe del Registro de la Propiedad de la Finca 25,291, Tomo 873, Folio 151, identificándolos como "Escritura".[5]

Pendiente de adjudicación dicha moción, el 17 de octubre, el licenciado Rullán Marín instó una *Moción Solicitando Anotación de Rebeldía* por haber transcurrido el término concedido sin que el Consejo de Titulares hubiese presentado la contestación a la querella. En respuesta a esto, el 23 de octubre, el Consejo de

---

[4] *Íd.*, a las págs. 19-34.
[5] *Íd.*, a la pág. 19.

Titulares presentó una *Oposición a Moción Solicitando Anotación de Rebeldía y Solicitud de Desestimación,* en la que argumentó que los documentos que anejaron a la moción en cumplimiento de orden no establecen la titularidad del Apartamento 1504. Adujo que, para demostrar la titularidad, los recurridos debieron haber presentado la escritura de partición mediante la cual se acredite a quién se le adjudicó el inmueble o la instancia del Registro de la Propiedad en la que se solicitara la inscripción del derecho hereditario a favor de los herederos del causante, previo a la partición. Añadió que, ante la ausencia de dichos documentos, se desconoce si alguno de los herederos mencionados en el testamento premurió al causante o falleció posteriormente, repudió la herencia o si el apartamento se le adjudicó a una de las personas mencionadas en el testamento.

Asimismo, señaló que, si bien solicitó un término para contestar la querella, entendía que ello resultaría en un ejercicio fútil hasta tanto el DACo no emitiera una determinación final sobre si desestimaba o no el reclamo.

El 25 de octubre, los recurridos replicaron a dicha moción apuntalando que los argumentos del Consejo de Titulares eran frívolos. Ello, ante el hecho de que a la muerte del causante el inmueble **pasó, sin necesidad de acto alguno, a ser un bien indiviso de la Sucesión**. Por lo que, no se requiere una partición para instar la causa de acción. Además, estos advirtieron que el recurrente no cumplió con la orden del DACo para contestar la querella por lo que reiteraron la petición de la anotación de rebeldía.

Aún sin resolver las referidas mociones, el 15 de noviembre de 2022, el DACo emitió una orden señalando la vista administrativa para el 26 de enero de 2023 mediante videoconferencia. La vista adjudicativa no fue celebrada; sin embargo, surge de los escritos de las partes que luego de argumentadas las mociones pendientes se le anotó la rebeldía al Consejo de Titulares y alegadamente se resolvió

que la Sra. Mimosa Marín de Rullán sería quien único tendría legitimación activa. Ninguno de estos dictámenes fue emitido por escrito.

La vista en su fondo fue celebrada el 21 de marzo siguiente. A la misma compareció el Lcdo. Fernando Rivera Casellas en representación de los recurridos y la Lcda. Johanny Martínez Batista como abogada del Consejo de Titulares. El 31 de marzo siguiente, la Jueza Administrativa, Lcda. Christine Auger Pinzón, emitió la *Resolución* recurrida, en la cual plasmó trece (13) determinaciones de hechos.[6] En esta, declaró *Ha Lugar* a la querella instada en contra del recurrente y en su consecuencia, le ordenó pagar $11,000 a "la parte querellante" por los daños ocasionados dentro del Apartamento.

Inconforme, el 18 de mayo de 2023, el Consejo de Titulares instó una *Moción de Reconsideración* y ese mismo día, el DACo le remitió un correo electrónico a su representación legal informándole que se registró la moción presentada y que se evaluaría próximamente.[7] Previo a que concluyera el término para que la agencia emitiera una orden o resolución alguna disponiendo finalmente dicho petitorio, el recurrente acudió ante esta *Curia*. Mediante la Sentencia emitida el 21 de agosto de 2023, se desestimó el recurso incoado al entender que el mismo era prematuro, KLRA202300335.

El 15 de septiembre de 2023, el Consejo de Titulares presentó el recurso de autos, dentro del término de 30 días a partir del 16 de agosto de 2023, último día del plazo que tenía el DACo para resolver la reconsideración. En el escrito de revisión judicial el recurrente le imputó al foro administrativo haber incurrido en los siguientes errores:

---

[6] *Íd.*, a las págs. 64-65.
[7] *Íd.*, a la pág. 83.

PRIMER ERROR: EL DACO ACTUÓ ARBITRARIAMENTE AL ANOTAR LA REBELDÍA A LA PARTE QUERELLADA-RECURRENTE SIN HABER RESUELTO LA SOLICITUD DE DESESTIMACIÓN QUE FUE PRESENTADA POR DICHA PARTE NI NINGUNA DE LAS MOCIONES QUE TENÍA ANTE SU CONSIDERACIÓN.

SEGUNDO ERROR: EL DACO INCURRIÓ EN ERROR MANIFIESTO Y VIOLÓ EL DEBIDO PROCESO DE LEY DE LA PARTE QUERELLADA-RECURRENTE AL ANOTARLE LA REBELDÍA Y NO PERMITIRLE PRESENTAR DEFENSAS Y PRUEBA EN EL CASO.

TERCER ERROR: EL DACO ERRÓ Y ABUSÓ DE SU DISCRECIÓN AL NO DESESTIMAR LA QUERELLA A PESAR DE QUE DEL TESTIMONIO DEL LCDO. LUIS G. RULLÁN SURGE QUE LA RECLAMACIÓN ESTÁ A TODAS LUCES PRESCRITA.

CUARTO ERROR: ERRÓ Y ABUSÓ DE SU DISCRECIÓN AL ADMITIR EN EVIDENCIA EL TESTIMONIO DE UN CONTRATISTA QUE NO FIGURA EN EL REGISTRO DE CONTRATISTAS DE LA PROPIA AGENCIA Y DAR POR BUENO LO DECLARADO POR ESTE EN CUANTO AL COSTO ESTIMADO DE REPARAR LOS ALEGADOS DAÑOS EN EL APARTAMENTO.

El 22 de septiembre de 2023, emitimos una *Resolución* concediendo a la parte recurrida el término de treinta (30) días para expresarse. El 25 de octubre siguiente se cumplió con lo ordenado; por lo que nos damos por cumplidos y, a su vez, decretamos perfeccionado el recurso.

Analizados los escritos de las partes y el expediente apelativo; así como estudiado el derecho aplicable, procedemos a resolver.

**II.**

### *Revisión Judicial*

La revisión judicial de las decisiones administrativas tiene como fin primordial limitar la discreción de las agencias y asegurarse que estas desempeñen sus funciones conforme a la ley. *García Reyes v. Cruz Auto Corp.*, 173 DPR 870, 891-92 (2008). Los tribunales apelativos deben conceder gran deferencia a las decisiones emitidas por las agencias debido a la vasta experiencia y conocimiento especializado en los asuntos que le han encomendado a estas. *Asoc. FCIAS v. Caribe Specialty et al. II*, 179 DPR 923, 940

(2010); Véanse, también, *Martínez v. Rosado*, 165 DPR 582, 589 (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2003). No obstante, la deferencia a las agencias administrativas <u>cede cuando esta no se fundamenta en evidencia sustancial, cuando la agencia erró en la aplicación de la ley y cuando su actuación resulta ser *arbitraria, irrazonable o ilegal*</u>. *The Sembler Co. v. Mun. de Carolina*, 185 DPR 800, 822 (2012) (énfasis suplido). Por tanto, la revisión judicial de una determinación administrativa se circunscribe a analizar: (1) si el remedio concedido fue apropiado; (2) si las determinaciones están sostenidas con evidencia sustancial; y (3) si erró la agencia al aplicar la ley. *Asoc. FCIAS v. Caribe Specialty et al. II, supra*, en la pág. 940. En consecuencia, nuestra función se circunscribe a considerar si la determinación de la agencia es razonable, ya que se persigue evitar que el tribunal revisor sustituya el criterio de la agencia por el suyo. *Otero v. Toyota, supra*, a la pág. 728.

A pesar de que las determinaciones de hechos merecen la mayor deferencia, las conclusiones de derecho son revisables en toda su extensión. Sección 4.5, *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley núm. 38-2017, 3 LPRA sec. 9675 (LPAUG). "Sin embargo, esta revisión no implica que los tribunales revisores tienen la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia". *Otero v. Toyota, supra*, a la pág. 729. Cuando un tribunal llega a un resultado distinto, este debe determinar si la divergencia es a consecuencia de un ejercicio razonable y fundamentado de la discreción administrativa, ya sea por la pericia, por consideraciones de política pública o en la apreciación de la prueba. *Íd. (citando a Misión Ind. P.R. v. J.P.*, 146 DPR 64, 134-135 (1998). En conclusión, el tribunal solo podrá sustituir el criterio de la agencia por el propio <u>cuando no pueda encontrar una *base racional* para explicar la</u>

determinación administrativa. *Hernández, Álvarez v. Centro Unido*, 168 DPR 592, 616 (2006).

La deferencia judicial hacia determinaciones de las agencias administrativas también se extiende al poder sancionador de estas. Ante el cuestionamiento de una sanción administrativa, "la revisión judicial no será para determinar si la sanción guarda proporción con la conducta por la cual se impone o si es demasiado fuerte". *O.E.G. v. Román*, 159 DPR 401, 417 (2003). La proporcionalidad es un elemento que le corresponde determinarlo a las agencias, puesto que estas gozan de experiencia especializada, están en mejor posición para conocer los efectos de una violación a los intereses protegidos, pueden asegurar cierto grado de uniformidad y coherencia en la imposición de sanciones. *Íd.,* en la pág. 417. De nuevo, los tribunales deben validar una sanción administrativa si está apoyada en evidencia sustancial que conste en el expediente visto en su totalidad, no constituye una actuación ultra vires y guarda una relación razonable con los actos que se pretenden prohibir. *Íd.*

### *Departamento de Asuntos del Consumidor (DACo)*

El DACo fue creado como una agencia especializada con el propósito primordial de vindicar e implantar los derechos del consumidor, proteger los intereses de los compradores. Artículo 3 de la Ley núm. 5 del 23 de abril de 1973, según enmendada, mejor conocida como la *Ley Orgánica del Departamento de Asuntos del Consumidor*, 3 LPRA sec. 341b. De igual manera, el Artículo 6 establece los poderes y facultades del Secretario del DACo, 3 LPRA sec. 341e, entre ellos, establecer las reglas y normas necesarias para la conducción de los procedimientos administrativos, tanto de reglamentación como de adjudicación. *Íd.*, inciso (g).

Por otra parte, la Ley de Condominios de Puerto Rico, Ley núm. 129-2020, encomendó al DACo la rápida adjudicación de los reclamos de los condómines. El legislador confirió a ese organismo

administrativo la jurisdicción exclusiva para entender en las impugnaciones de: (1) los acuerdos del Consejo de Titulares, (2) las determinaciones, actuaciones u omisiones del Director o de la Junta de Directores, relacionadas con la administración de inmuebles que comprendan por lo menos un apartamento destinado a vivienda. Artículo 65 de la Ley núm. 129-2020, 31 LPRA sec. 1923(j); *Consejo de Titulares v. Gómez Estremera et al.*, 184 DPR 407,420 (2010); *Amill v. J. Dir. Cond. Pumarada,* 156 DPR 495, 500 (2002). El DACo tendrá una división especial de adjudicación de querella para atender todo lo relacionado a condominios en los que exista al menos un apartamento dedicado a vivienda. El Secretario nombrará el personal necesario para la pronta atención de las querellas presentadas por los titulares de apartamentos contra el Consejo de Titulares, o Agente Administrador o la Junta de Directores. Artículo 66 de la Ley núm. 129-2020, 31 LPRA sec. 1923(k).

Ahora bien, de conformidad con la LPAUG, y conforme a los poderes delegados, el DACo aprobó el *Reglamento de Procedimientos Adjudicativos*, Reglamento 8034 del 13 de junio de 2011 (Reglamento Núm. 8034).[8] Lo anterior, con el fin de asegurar la solución justa, rápida y económica de las querellas presentadas ante o por el DACo y así promover un procedimiento uniforme para su adjudicación. Regla 1 del Reglamento Núm. 8034.

En lo pertinente, la Regla 4, inciso (u), del aludido Reglamento define querellante como "consumidor o su **representante autorizado** que reclama un derecho o servicio **en su capacidad personal**. En adición, el Departamento podrá ser querellante para hacer cumplir las leyes y reglamentos, e imponer multas o sanciones." [Énfasis nuestro]. A su vez, la Regla 7.3 del cuerpo reglamentario establece lo siguiente:

---

[8] Puntualizamos que las querellas que se presenten ante el DACo, al amparo del Reglamento Núm. 9386 del 6 de junio de 2022, intitulado *Reglamento de Condominios* deberá cumplir con los criterios del *Reglamento de Procedimientos Adjudicativos*. Regla 25 del Reglamento Núm. 9386.

> Todo abogado que asuma representación legal y/o renuncia a la misma **está obligado a notificarlo mediante escrito al Departamento y a todas las partes** de la querella, así como todos los escritos radicados. No se aceptarán mociones globales para asumir o renunciar a una representación legal. [Énfasis nuestro]

Asimismo, destacamos que la Regla 29.1 del Reglamento Núm. 8034 claramente establece que la parte adversamente afectada por una resolución u orden parcial interlocutoria podrá **solicitar la reconsideración del dictamen**.

### *Debido Proceso de Ley*

En su concepción abarcadora, el debido proceso de ley se refiere al "derecho de toda persona a tener un proceso justo y con todas las garantías que ofrece la ley, tanto en el ámbito judicial como en el administrativo". *Marrero Caratini v. Rodríguez Rodríguez,* 138 DPR 215, 220 (1995), citado en *Aut. Puertos v. HEO,* 186 DPR 417, 428 (2012). Por tanto, el procedimiento adjudicativo ante las agencias debe ceñirse a las garantías mínimas del debido proceso de ley. *PVH Motor v. ASG,* 209 DPR 122, 131 (2022).

La dimensión procesal del debido proceso de ley en el contexto adjudicativo exige como mínimo: (1) la notificación adecuada del proceso; (2) el proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de un abogado, y (6) que la decisión se base en el expediente. *Vázquez González v. Mun. de San Juan,* 178 DPR 636, 643 (2010); *Garriga Villanueva v. Mun. de San Juan,* 176 DPR 182, 197 (2009). Estas salvaguardas constitucionales se encuentran, de igual forma, reconocidas en la *Carta de Derechos* de la Ley núm. 38-2017, *supra.* Específicamente, la Sección 3.1 de la LPAUG, 3 LPRA sec. 9641, enumera las garantías procesales que deben ser salvaguardadas en todo procedimiento adjudicativo celebrado ante una agencia, como lo son: la notificación oportuna de los cargos contra una parte, a

presentar evidencia; a una adjudicación imparcial y que la decisión sea basada en el expediente. Además, nuestro alto foro ha establecido que la garantía de notificación, salvaguardada por el debido proceso de ley, debe caracterizarse como "real y efectiva, ajustada a los preceptos estatutarios aplicables". [citas omitidas]. *PVH Motor v. ASG*, supra, a las págs. 131-132.

Por último, destacamos la norma trillada que establece que las agencias administrativas están obligadas a observar estrictamente sus propios reglamentos. *Torres v. Junta Ingenieros*, 161 DPR 696, 715 (2004); *T-Jac, Inc. v. Caguas Centrum Limited*, 148 DPR 70, 81 (1999). Así, el DACo no tiene facultad para aplicar sus reglamentos solo cuando le plazca. *DACO v. Toys "R" Us*, 191 DPR 760, 771 (2014).

**III.**

En esencia, el recurrente adujo en los primeros errores señalados que el DACo violentó el debido proceso de ley y actuó arbitrariamente al anotarle la rebeldía sin atender previamente las controversias que estaban ante su consideración. Incluso, indicó que la rebeldía le fue anotada "en sala abierta" sin tener la oportunidad de solicitar su reconsideración. Además, señaló que el Lcdo. Fernando Rivera Casellas compareció como representante legal de la "parte querellante" por primera vez en la vista administrativa.

Como señalamos, el debido proceso de ley en su vertiente procesal establece unas garantías mínimas que se extienden a los procedimientos adjudicativos de las agencias administrativas, entre ellas, derecho a la notificación oportuna de los reclamos, a presentar evidencia y a una adjudicación imparcial. Del Apéndice del Recurso surge que la Querella fue presentada por *derecho propio* por el "querellante" identificado como *Mimosa Marín de Rullán, Luis G.*

*Rullán y otros*.[9] Entonces, como consecuencia de las alegaciones contenidas en esta, la Jueza Administrativa emitió una *Notificación y Orden* para que los querellantes demostraran la titularidad del apartamento, *so pena* de desestimación de la querella.

De igual manera, claramente le requirió a estos que de ser parte una sucesión debían presentar la autorización de representación. No obstante, **sin haberse emitido determinación alguna sobre la titularidad del apartamento ni en cuanto a la representación de la sucesión, es decir, sin resolver quién efectivamente era la persona querellante se señaló la vista en su fondo.** Incluso, no se evaluaron los documentos que se acompañaron con la *Moción en Cumplimiento de Orden* instada por los recurridos ni la alegación respecto a que los querellantes no poseen copia de la escritura de compraventa. Además, según consta en los escritos de ambas partes, fue en la vista celebrada el 26 de enero de 2023 donde supuestamente se le anotó la rebeldía al Consejo de Titulares, se denegó la desestimación y se estableció que la única persona con legitimación era la Sra. Mimosa Marín de Rullán. Aún tomando como cierto que estos dictámenes fueron emitidos en "corte abierta", **ninguno fue resuelto por escrito** conforme ordena el propio reglamento del DACo. Inclusive, en el dictamen final, la Jueza Administrativa no hace mención de ninguna de las controversias "supuestamente" resueltas en la referida vista.

Al respecto, destacamos que la Sección 3.10 de la LPAUG, 3 LPRA sec. 9650, dispone que el funcionario que presida la vista o los procedimientos podrá declarar a una parte en rebeldía, pero deberá **notificar por escrito** dicha determinación. Además, la Regla 29.1 del Reglamento Núm. 8034, dispone que, una vez atendidos todos los asuntos interlocutorios, la parte que entienda que fue

---

[9] Véase el Apéndice del Recurso, a la pág. 5.

afectada por la determinación tiene derecho a solicitar una reconsideración. Esto, para cumplir con el debido proceso de ley.

Por otra parte, la Regla 7.3 del Reglamento Núm. 8034 establece que todo abogado que asuma representación legal está obligado a notificarlo por escrito a la agencia y a todas las partes. Como vimos del trámite procesal antes consignado, la querella fue presentada *on line* por "derecho propio". Luego, y según surge de la *Resolución* recurrida, comparecieron a la vista adjudicativa como representantes legales de la "parte querellante" el licenciado Rullán Marín y el Lcdo. Fernando Rivera Casellas, sin haber dado cumplimiento a la Regla 7.3, antes citada.[10] Puntualizamos, además, que en el escrito intitulado *Alegato de la Parte Recurrida* no se argumentó sobre este hecho por estos entender que no fue un error señalado por el recurrente.

Por último, en el dictamen recurrido no se identifica *quién exactamente es la parte querellante* conforme a la *Notificación y Orden* que se emitiera el 22 de septiembre de 2022. Tampoco "los recurridos" en su alegato en oposición argumentaron sobre esta controversia. Únicamente se limitaron a señalar que el Consejo de Titulares "no alega error sobre este particular."[11] Asimismo, en nota al calce indicaron que la Sra. Mimosa Marín de Rullán falleció el 6 de junio de 2023 a sus 98 años.

En resumen, en el caso de autos se celebró la vista administrativa sin que se resolvieran los asuntos expuestos en la *Notificación y Orden* del 22 de septiembre de 2022, los que sin duda alguna debían ser atendidos primariamente por estar íntimamente relacionados a la capacidad jurídica de los "querellantes-

---

[10] Destacamos que el Lcdo. Rullán Marín es miembro de la Sucesión de Pedro J. Rullán Rodríguez.
[11] Véase el Alegato de la Parte Recurrida, a la pág. 2.

recurridos", lo cual incide en la jurisdicción del DACo para resolver el caso.

De igual forma, reafirmamos que el organismo administrativo celebró dicha vista **sin disponer por escrito** en cuanto a la moción en oposición a la anotación de la rebeldía al Consejo de Titulares, y sin haber tenido previamente ante su consideración la notificación por escrito de la representación legal de la "parte querellante".

En consecuencia, resulta forzoso concluir que el DACo incumplió con su propio reglamento violentando a su vez el debido proceso de ley que le cobija al Consejo de Titulares. Por ende, los errores primero y segundo se cometieron.

Reiteramos y advertimos como normativa de derecho administrativo que, una vez una agencia ha promulgado unos reglamentos para facilitar su proceso decisional y limitar el alcance de su discreción, viene obligada a observarlos estrictamente y no queda a su voluntad el reconocer o no los derechos que ella misma ha extendido. Así también, está obligada a velar que los trámites sean acordes con las disposiciones de la LPAUG.

En virtud de lo antedicho, y ante el incumplimiento craso del DACo con su propio Reglamento y las disposiciones de la LPAUG discutidas, procede revocar el dictamen recurrido y devolver el caso ante el foro administrativo para que atienda todas las controversias que tiene ante su consideración, de manera especial, la oposición a la anotación de rebeldía y si efectivamente se cumplió con lo requerido en la *Notificación y Orden* dictada el 22 de septiembre de 2022. Entonces, una vez atendidas todas estas controversias y pasados los términos dispuestos en la Regla 29.1 del Reglamento Núm. 8034, procede señalar la vista adjudicativa. Por último, destacamos que, a tenor de la decisión arribada, se hace innecesario discutir los errores tercero y cuarto.

**IV.**

Por los fundamentos antes expuestos, revocamos la *Resolución* recurrida y devolvemos el caso ante el DACo para la continuación de los procedimientos, conforme a lo aquí resuelto.

Notifíquese.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones